517 F.2d 420
 UNITED STATES of America ex rel. Chester WOJTYCHA, Appellant,
v.
Walter HOPKINS, Chief Probation Officer, Hudson County, New
Jersey, and Geoffrey Gaulkin, Hudson County
Prosecutor, Appellees.
 No. 74-1807.
 United States Court of Appeals,
Third Circuit.
 Argued March 5, 1975.
Decided May 29, 1975.
 
 Crummy, Del Deo, Dolan & Purcell, Newark, N. J., for appellant; John T. Dolan, Newark, N. J., of counsel; David M. Hyman, Newark, N. J., on the brief.
 William F. Hyland, Atty. Gen. of N. J., Trenton, N. J., for appellees; Robert J. Genatt, Deputy Atty. Gen., East Orange, N. J., of counsel and on the brief.
 Before ADAMS, ROSENN and WEIS, Circuit Judges.
 OPINION OF THE COURT
 WEIS, Circuit Judge.
 
 
 1
 This is a habeas corpus case having its origin in a state conflict of interest charge against a municipal official. The dismissal of an ensuing appeal by the United States Supreme Court, in the district court's view, was dispositive of an attack on the constitutionality of the relevant state statute. While granting that a probationary sentence was sufficient to establish federal jurisdiction, the court rejected other bases for relief. We agree and affirm.
 
 
 2
 Petitioner was convicted by the New Jersey state courts of violating a statute prohibiting an elected freeholder from being "directly or indirectly interested" in the furnishing of supplies paid for by the Board of Freeholders of a municipality.[1] He was sentenced to a one-year suspended jail term, a fine of $1,000, and probation conditioned upon the payment of $2,500 costs.
 
 
 3
 The appellate division of the Superior Court of New Jersey affirmed the conviction, and the state Supreme Court denied certification.[2] Petitioner appealed to the United States Supreme Court on the premise that the statute was unconstitutional because it was vague and it violated the Equal Protection Clause. The appeal was dismissed "for want of a substantial federal question."[3]
 
 
 4
 The petition for habeas corpus brought in the district court was denied, and this appeal followed.
 
 
 5
 For some years before his election to the Board of Freeholders of Hudson County in November, 1969, petitioner Wojtycha had been a proprietor of the Mooney Surgical Company. Prior to taking the oath of office, he signed the necessary agreements to sell this company to the Helm Supply Corporation whose only stockholders were Wojtycha's son, daughter, and their spouses. The consideration recited in the contract was a cash payment of $32,031.41 and the cancellation of a debt owed by petitioner to Helm.
 
 
 6
 Petitioner's wife had maintained the books and records for both Helm and Mooney at petitioner's home without charge for some years. She continued to do so during the transition period, and, although not an officer of Helm, she signed documents and checks for the corporation with the apparent acquiescence of the stockholders.
 
 
 7
 On January 8, 1970, the Board of Freeholders, of which petitioner was then a member, awarded Mooney a contract to furnish the county's surgical supplies.[4] Five days later, Helm's checks in the amount of $32,031.41, payable to Mooney, were deposited in its still active account on which petitioner could draw. He then signed checks in blank and delivered them to his wife. After she filled out the checks in the total sum of $32,000, payable to Edward Wojtycha, petitioner's brother, the checks were deposited in Edward's account. He, in turn, gave a signed blank check to petitioner's wife, who completed the instrument to make the amount $32,000 and Helm the payee.
 
 
 8
 At trial in the state court, the defense contended that Helm had received a loan from Edward who, lacking funds, had previously borrowed the money from petitioner. The prosecution attacked the whole transaction, stating that it was a sham and that petitioner had retained his proprietary interest in Mooney. Alternatively, the state contended that, considering the size of the corporation and its assets, petitioner, as a substantial unsecured creditor, was "interested" in the company and his brother Edward was a mere "straw man."
 
 
 9
 The appellate division found it unnecessary to decide whether a debtor- creditor relationship constituted an "interest" under the statute. It concluded that the proofs accepted by the jury established the fact of Wojtycha's beneficial ownership in Mooney despite the apparent transfer.[5]
 
 
 10
 Petitioner contends that the statute is unconstitutional, that the indictment was defective, and that his waiver of immunity before the grand jury was coerced.
 
 I.
 THE IN-CUSTODY REQUIREMENT
 
 11
 Initially, we must inquire whether federal jurisdictional requirements have been met. At the time the petition was filed in the district court, Wojtycha was on bail, and the execution of his sentence had been stayed by the state court. 28 U.S.C. § 2241 states that in order to qualify for habeas corpus relief in the federal courts an applicant must be "in custody."[6] This condition has been given an expansive interpretation, and clearly the petitioner need not be physically confined in a penal institution.
 
 
 12
 In Hensley v. Municipal Court, 411 U.S. 345, 93 S.Ct. 1571, 36 L.Ed.2d 294 (1973), the Supreme Court held that a person released on his own recognizance pending appeal of his conviction met the "in-custody" requirement. The Court relied, to a great extent, on the fact that the petitioner was subjected to restraints not shared by the public generally he could not come and go as he pleased, and his freedom of movement rested in the hands of state judicial officers.
 
 
 13
 There is an important distinction between that case and the one sub judice: in Hensley, if the petitioner was unsuccessful, he would have been required to serve a jail term. That eventuality is not squarely presented here because Wojtycha's jail sentence was suspended. Without more, petitioner's standing to claim habeas corpus relief would be doubtful. United States ex rel. Dessus v. Pennsylvania, 452 F.2d 557 (3d Cir. 1971), cert. denied, 409 U.S. 853, 93 S.Ct. 184, 34 L.Ed.2d 96 (1972). However, in addition to the suspended sentence, Wojtycha was placed on probation, and a failure to pay the $2,500 in costs could have resulted in his incarceration.[7] The factual situation is similar to that in Walker v. North Carolina, 262 F.Supp. 102 (W.D.N.C.1966), aff'd, 372 F.2d 129 (4th Cir.), cert. denied, 388 U.S. 917, 87 S.Ct. 2134, 18 L.Ed.2d 1360 (1967). There, Judge Craven ruled that the imposition of a suspended sentence which carried with it the threat of incarceration for failure to comply with certain conditions was sufficient to establish federal habeas corpus jurisdiction.
 
 
 14
 Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963), held that a person on parole was in the custody of the state parole board. The Court noted that a parolee is subjected to a variety of restrictions which "significantly restrain petitioner's liberty to do those things which in this country free men are entitled to do." 371 U.S. at 243, 83 S.Ct. at 377. We recognize that there may be differences between parole and probation conditions, and, although the restrictions in Jones v. Cunningham,supra, were more substantial than those applicable to Wojtycha, such considerations would not preclude application of that case's rationale to petitioner here. In United States v. Washington, 341 F.2d 277 (3d Cir.), cert. denied, 382 U.S. 850, 86 S.Ct. 96, 15 L.Ed.2d 89 (1965), we stated that the custody requirements for 28 U.S.C. § 2241 and § 2255 were the same and added that probation was sufficient to constitute custody under § 2255.[8] We conclude, therefore, that petitioner has met the burden of establishing the statutory prerequisite of custody and that jurisdiction does exist.
 
 II.
 
 15
 THE CONSTITUTIONALITY OF THE NEW JERSEY STATUTE
 
 
 16
 During the proceedings in the state courts, petitioner persisted in his attack on the constitutionality of the New Jersey statute, N.J.S.A. 2A:135-8(c). As has been noted, an appeal was taken to the Supreme Court of the United States[9] which dismissed the case for want of a substantial federal question. Our task is to determine whether that action adjudicated the issue raised on appeal and foreclosed further consideration in habeas corpus proceedings. We are of the opinion that it did.
 
 
 17
 28 U.S.C. § 2244 provides that a prior judgment of the Supreme Court which actually adjudicates a claimed federal right is conclusive for subsequent habeas corpus proceedings. Wojtycha's appeal was resolved without argument and without opinion. The Supreme Court had obligatory jurisdiction of the case[10] rather than that of a discretionary nature as is applicable in certiorari procedures. It was therefore an appeal which the Court was required to decide on the issue of unconstitutionality and which we should assume it did. To some extent the situation is similar to that of an appeal from a statutory three-judge court which the Supreme Court may determine by a summary affirmance. See R. Stern & E. Gressman, Supreme Court Practice 233 (4th ed. 1969).
 
 
 18
 The adjudicatory effect of a dismissal for a lack of a substantial federal question has triggered a lively debate among scholars. But we agree with our brothers in the Second Circuit that the inferior federal courts are bound by the Supreme Court's pronouncement on a case's lack of substantiality. United States ex rel. Epton v. Nenna, 446 F.2d 363 (2d Cir.), cert. denied,404 U.S. 948, 92 S.Ct. 282, 30 L.Ed.2d 265 (1971); Port Authority Bondholders v. Port of New York Authority, 387 F.2d 259 (2d Cir. 1967). See also Cross v. Bruning, 413 F.2d 678 (9th Cir.), cert. denied, 396 U.S. 970, 90 S.Ct. 455, 24 L.Ed.2d 437 (1969).[11] We need not enter the controversy over the precedential effect of such decisions because the issues here were between the parties to this proceeding. See Mercado v. Rockefeller, 502 F.2d 666 (2d Cir. 1974), cert. denied, 420 U.S. 925, 95 S.Ct. 1120, 43 L.Ed.2d 394 (1975). The Supreme Court has already ruled that the very contentions now pressed by the petitioner do not present a violation of Wojtycha's constitutional rights. We resist the temptation to discuss this interesting issue at length and hold simply that the question of the unconstitutionality of the statute has been removed from our consideration.
 
 III.
 THE INDICTMENT
 
 19
 Petitioner contends that the indictment was vague because it failed to identify the substantive offense and that the first count was improperly amended by the trial court. Our review of this contention must be narrow.[12] The United States constitutional requirement of indictment by a grand jury has not been made applicable to the states, Alexander v. Louisiana, 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972), Hurtado v. California, 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232 (1884), and accordingly, we confine ourselves to a determination of whether due process requirements have been satisfied. Cases such as United States v. Goldstein, 502 F.2d 526 (3d Cir. 1974), and United States v. DeCavalcante, 440 F.2d 1264 (3d Cir. 1971), which discuss indictments in federal prosecutions, are of little assistance in this context.
 
 
 20
 Since a state is constitutionally free to dispense with the grand jury indictment altogether and may proceed on a prosecutor's information if it so chooses, Beck v. Washington, 369 U.S. 541, 545, 82 S.Ct. 955, 8 L.Ed.2d 98 (1962), the legality of an amendment to an indictment is primarily a matter of state law. In this instance, the state trial judge found that the first count, dealing with the substantive offense, was not sufficiently explanatory. However, the second count, alleging a conspiracy, listed overt acts in sufficient detail so that the defendant became aware of the factual bases for the first count. The trial court ruled that, when read as a whole, the indictment sufficiently apprised the defendant of the derelictions with which he was charged. On this basis, the trial judge permitted amendment of the first count to include the averments of the overt acts in the second count. Obviously, that activity had been considered and passed upon by the grand jury which had included the specific events in the conspiracy count. The New Jersey appellate courts did not deem this reversible error, and it is not our function to review their interpretation of state law.
 
 
 21
 Insofar as due process claims may be involved, the indictment did fairly apprise the defendant of the charges to which he was subjected and of the basic facts upon which they were founded and provided adequate protection for double jeopardy purposes. There was no error in the district court's conclusion that the indictment was not constitutionally deficient.
 
 IV.
 THE IMMUNITY ISSUE
 
 22
 The district court found no merit to petitioner's claim that he was coerced into testifying before the grand jury. After appearing for the grand jury session, Wojtycha stated that he would be willing to testify only because he feared the loss of his job. The prosecutor then refused to question petitioner. Cf. Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967). After consulting with his counsel, however, Wojtycha stated on the record that he would testify voluntarily and executed a waiver of rights. We find no constitutional defect in this procedure. Petitioner had the benefit of counsel and, apparently, chose to testify as a matter of strategy. He has alleged no facts which would constitute coercion.
 
 
 23
 The district court said also that there was a lack of prejudice since there was no contradiction between the testimony that the defendant offered at the trial and that before the grand jury. We do not rely on this factor, however, because the state chose to offer the grand jury testimony as part of its case in chief. Had that evidence not been available, some elements of the prosecution case might have been lacking. We do not explore this facet further since we rely upon the district court's determination of voluntariness.
 
 
 24
 We have also reviewed petitioner's claim that a verdict of guilty on the first count was inconsistent with acquittal on the second. We conclude that the alleged inconsistency does not constitute a violation of Wojtycha's constitutional rights.
 
 
 25
 The judgment of the district court will be affirmed.
 
 
 
 [1]
 The statute, N.J.S.A. 2A:135-8, provides in pertinent part as follows:
 "Any member of a board of chosen freeholders or of the governing body of a municipality, or of a board of education in any school district, who . . .
 "c. Is directly or indirectly interested in furnishing any goods, chattels, supplies or property to or for the county, municipality or school district, the agreement or contract for which is made for the expense or a consideration of which is paid by the board or governing body of which such member is a part . . . Is guilty of a misdemeanor."
 Petitioner was charged on two counts, the first on the substantive offense and the second on conspiracy. He was convicted on the substantive allegations only.
 
 
 [2]
 New Jersey v. Wojtycha, 62 N.J. 78, 299 A.2d 76 (1972)
 
 
 [3]
 Wojtycha v. New Jersey, 410 U.S. 920, 93 S.Ct. 1371, 35 L.Ed.2d 582 (1973)
 
 
 [4]
 Before the contract was awarded, petitioner had supplied documentation to the county evidencing the sale of his business. The county counsel then issued an opinion stating that the transfer of Mooney was valid
 
 
 [5]
 The petitioner has not contended here or in the district court that there is any constitutional defect in the verdict of guilty based on one of the two theories which were submitted to the jury
 
 
 [6]
 The "in-custody" jurisdictional requirement is determined as of the date the petition is filed in the district court. Carafas v. La Vallee, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968)
 
 
 [7]
 After the petition for habeas corpus was filed, the state prosecutor filed a motion in the Superior Court to compel the immediate payment of fine and costs or, in the alternative, for a declaration of a violation of probation
 
 
 [8]
 For holdings to the same effect in other circuits, see United States ex rel. B. v. Shelly, 430 F.2d 215 (2d Cir. 1970); Engle v. United States, 332 F.2d 88 (6th Cir.), cert. denied, 379 U.S. 903, 85 S.Ct. 192, 13 L.Ed.2d 176 (1964); Hahn v. Burke, 430 F.2d 100 (7th Cir. 1970), cert. denied, 402 U.S. 933, 91 S.Ct. 1522, 28 L.Ed.2d 868 (1971); Benson v. California, 328 F.2d 159 (9th Cir. 1964), cert. denied, 380 U.S. 951, 85 S.Ct. 1086, 13 L.Ed.2d 970 (1965). See also Developments in the Law Federal Habeas Corpus, 83 Harv.L.Rev. 1038, 1073 (1970)
 
 
 [9]
 28 U.S.C. § 1257(2) provides that, where the constitutional validity of a state statute has been sustained by the highest court of the state, an appeal may be taken to the United States Supreme Court
 
 
 [10]
 "The discretionary element involved (in an appeal under 28 U.S.C. § 1257(2)), at least in theory, goes only to the question of the need for or utility of further argument." Hart & Wechsler, The Federal Courts and the Federal System 649 (2d ed. 1973)
 
 
 [11]
 In Ohio ex rel. Eaton v. Price, 360 U.S. 246, 79 S.Ct. 978, 3 L.Ed.2d 1200 (1959), Justice Brennan in a separate statement noted that votes to dismiss for want of a substantial federal question are votes on the merits. For a partial list of some of the scholarly articles on the subject, see United States ex rel. Epton v. Nenna, 318 F.Supp. 899, 906 n.8 (S.D.N.Y.1970)
 
 
 [12]
 The petitioner raised these points and others in his appeal to the Supreme Court. They do not fall within the category of mandatory jurisdiction in 28 U.S.C. § 1257 and thus are treated as if raised on a petition for certiorari. Denial of certiorari is not an adjudication of the issues within the meaning of 28 U.S.C. § 2244