Michael O. WATSON,
Petitioner-Appellant,

v.

A. R. JAGO, Superintendent,
Respondent-Appellee.

No. 76–1979.

United States Court of Appeals,
Sixth Circuit.

Argued Dec. 3, 1976.

Decided and Filed June 14, 1977.

James R. Willis, Stephen O. Walker, Cleveland, Ohio, Michael O. Watson, for petitioner-appellant.

William J. Brown, Atty. Gen. of Ohio, Allen P. Adler, Columbus, Ohio, for respondent-appellee.

Before WEICK, PECK and LIVELY, Circuit Judges.

JOHN W. PECK, Circuit Judge.

Appellant Michael Watson was indicted by a Cuyahoga County, Ohio, grand jury for deliberate and premeditated murder in the first degree, in violation of former section 2901.01 of the Ohio Revised Code. At trial, appellant claimed self-defense. The jury found appellant guilty of the lesser included offense of murder in the second degree, and appellant was sentenced to life imprisonment. After appealing to the Cuyahoga County Court of Appeals and to the Ohio Supreme Court, appellant sought collateral review of his conviction in the federal district court by petition for writ of habeas corpus. The district court, however, denied the petition.

Appellant has brought this appeal, making several arguments in support of his petition.[1] We reach only one,[2] that appellant was denied due process of law under the Fourteenth Amendment when he was forced during the state court trial to defend against a charge of felony-murder, which was not contained in the indictment. Because we agree with appellant on this issue, we reverse and remand the case to the district court with instructions to grant the writ of habeas corpus.

1. Appellant presented to the district court and to this Court four contentions. First, due process was denied appellant when the prosecutor introduced, as substantive proof of guilt, testimony showing that appellant had exercised his right to remain silent at the time of arrest. Second, due process and effective assistance of counsel were denied appellant when he was forced to defend against charges not brought by the grand jury. Third, due process was denied appellant when the prosecutor asked inflammatory questions without a reasonable belief that such questions would produce admissible evidence. Fourth, due process was denied appellant when the state trial court required him to prove affirmatively, by the preponderance of the evidence, self-defense.

2. Appellant's fourth contention, regarding the burden of proof he had to shoulder on the issue of self-defense, was never presented to the state courts. Also, appellant's third contention, regarding prosecutorial misconduct, was not presented in the application for leave to the Ohio Supreme Court. With respect to these contentions, appellant apparently has not ex-

I

On February 6, 1973, in the late afternoon, appellant and a friend, John Bell, entered the store of a Cleveland, Ohio grocer, William Dallas. Bell asked the grocer's wife, who was working in the store along with her husband, for a six-pack of beer. Mrs. Dallas got the beer from the cooler and set it on the counter. William Dallas then came over and asked Bell for some identification to show that he was of age to buy the beer. A conversation concerning credentials followed. The conversation ended when appellant drew a pistol and shot Mr. Dallas twice. One bullet struck Dallas in his left arm. The other bullet struck Dallas in the head, killing him. Mrs. Dallas witnessed the shooting.

According to Mrs. Dallas, immediately before the shooting, appellant had said to Mr. Dallas that he had credentials and had asked whether Mr. Dallas wanted to see them. According to appellant and Bell, however, Mr. Dallas had pulled a gun, and appellant claimed that he had fired in self-defense. Most of the store owners in the area were armed, and on that day, Mr. Dallas had carried a gun in the pocket of his white butcher-type apron. The police later found the gun owned by Mr. Dallas on the floor, under the victim's body. That gun had not been fired.

hausted his state remedies. *Picard v. Connor*, 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971). Appellant did exhaust his state remedies as to his first contention, that the prosecutor's elicitation of testimony from a police detective showing that appellant had exercised his rights to remain silent and to retain counsel at time of arrest was introduced as substantive proof of guilt and thus, in view of the circumstances of the questioning, was, under *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965), harmful unconstitutional prosecutorial comment upon an accused's assertion of his constitutional rights [as distinguished from proof of an accused's silence at time of arrest offered for impeachment purposes, held unconstitutional in *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976)]. We have not reached that contention, however, because of our disposition of the case on the ground that appellant was forced to defend against a charge of felony-murder when the indictment specified only premeditated first degree murder.

Immediately after the shooting, appellant and Bell fled the scene without the beer in a red 1964 Cadillac, which had transported appellant and Bell to the store and which had carried two other friends. A description and the license plate number of the automobile were given to the police by a witness in the vicinity of the store. A couple of hours later, the automobile was stopped. Three males were arrested, but appellant escaped on foot. Six days later, on February 12, 1973, appellant surrendered to the police.

Appellant was indicted for deliberate and premeditated first degree murder only. Nevertheless, at the state court trial, the prosecutor in his opening statement, after reading the indictment for deliberate and premeditated murder, asserted that:

"  .   .   .   the evidence  .  .  .  will convince you beyond a reasonable doubt that this man Watson [appellant] did in fact maliciously, premeditatively and while in the act of a robbery murder Willie Dallas."

Defense counsel, before making his opening statement, moved to dismiss the indictment. He argued that it was an infringement of a defendant's right to notice of criminal charges to be brought against him by the State for the prosecutor to present a case on the basis of felony-murder when the indictment specified only a charge of first degree murder with deliberate and premeditated malice and did not include a charge of felony-murder. The prosecutor, when asked by the Court to reply to this argument, stated that premeditated murder and felony-murder were both first degree murder and that the indictment, by charging first degree murder, did not have to include a statement that the indictment was for felony-murder for a defendant to be prosecuted on that charge. The trial court overruled the motion to dismiss, and the trial proceeded with the presentation of the State's case.

The prosecutor called several witnesses: Mrs. Dallas, the wife of the victim; a witness who was near the scene of the crime; Willie Waldon and Gerald Ford, friends of appellant who waited in the Cadillac when the killing took place; Peter Becker, a police detective who interrogated Ford after the shooting; and a police officer who arrived at the scene of the crime shortly after the killing. Much of the questioning focused on the possible robbery.

When the prosecution stated that it would rest its case, defense counsel, out of the jury's hearing, moved to withdraw the charge of first degree murder from the jury's consideration. Defense counsel argued that there was no evidence to support a possible jury verdict of first degree murder, first, because there was no evidence of premeditation or deliberation on appellant's part and secondly, because there was no evidence to show the commission of a robbery. The prosecutor disagreed, responding that the evidence did show a premeditated killing and that he had proven a prima facie case of robbery. The Court denied the defense motion.

After a short recess, the prosecutor in proceedings between the Court and counsel in the Court's chambers, requested the Court not to charge the jury on first degree felony-murder. The prosecutor stated that the proof showed that some of the elements of armed robbery were present and that such facts were relevant with respect to the complete circumstances of the case.

Defense counsel immediately protested. He reminded the Court that at the start of the trial he had moved for the exclusion of any reference to a felony-murder because the indictment did not mention felony-murder. He further argued that because the Court allowed the trial to proceed with the inclusion of the felony-murder charge and because the defense had patterned its cross-examination in large part on the refutation of inferences supporting a charge of felony-murder, to drop the felony-murder charge would be prejudicial since it would preclude the defense counsel from talking about what he had tried to establish on cross-examination.

The prosecutor replied that the effect of not charging the jury on felony-murder was "simply to remove what basically and nor-

mally would [have] be[en] one count of the indictment." (State Court Trial Transcript 171.) The prosecutor denied that there could be prejudice in removing that one count since there was evidence to support a verdict of deliberate and premeditated first degree murder. The evidence of a robbery was characterized as "ancillary" to the deliberate and premeditated murder.

The Court agreed with the prosecution and made a tentative ruling that the jury would be charged only on deliberate and premeditated first degree murder. Defense counsel stated for the record that it was a strange situation for the State to start out by saying that it would prove felony-murder along with premeditated murder, to deny that there had to be a separate indictment for felony-murder from premeditated murder, to spend a great part of its case trying to prove felony-murder, and then, after resting its case, to seek withdrawal of the felony-murder charge and admit that a separate indictment was needed for felony-murder. Nevertheless, the Court adhered to its tentative decision to charge only deliberate and premeditated first degree murder.

The trial proceeded with the defense calling appellant and John Bell and the prosecution calling Mrs. Dallas in rebuttal. After the Court denied certain defense motions, the Court charged the jury on deliberate and premeditated first degree murder as charged in the indictment. The jury found appellant not guilty of deliberate and premeditated first degree murder but guilty of the lesser included offense of second degree murder.

Appellant appealed unsuccessfully to the Cuyahoga County, Ohio Court of Appeals and to the Ohio Supreme Court. His case is now before us because the district court denied his petition for a writ of habeas corpus. The question which we reach deals with the fact that appellant was forced to defend against a charge of felony-murder that was not brought by the grand jury in the indictment. There are two main issues with respect to this question: (1) whether there was a constructive amendment to the indictment, and (2) whether, if there was a constructive amendment, it violated appellant's constitutional rights under the Fourteenth Amendment in this state court, as opposed to federal court, trial.

II

Under the Fifth Amendment's provision that no person shall be held to answer for a capital crime unless on the indictment of a grand jury, it has been the rule that after an indictment has been returned its charges may not be broadened except by the grand jury itself. *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960); *Ex Parte Bain*, 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887). *See Russell v. United States*, 369 U.S. 749, 770, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962); *United States v. Norris*, 281 U.S. 619, 622, 50 S.Ct. 424, 74 L.Ed. 1076 (1930). In 1887, the Supreme Court in *Bain, supra*, 121 U.S. at 9–10, 7 S.Ct. 781, held that a defendant could only be tried upon the indictment as found by the grand jury and that language in the charging part could not be changed without rendering the indictment invalid. In *Stirone, supra*, 361 U.S. at 217, 80 S.Ct. at 273, the Supreme Court stated that *Bain* "stands for the rule that a court cannot permit a defendant to be tried on charges that are not made in the indictment against him." This rule has been reaffirmed recently several times in this Circuit. *United States v. Maselli*, 534 F.2d 1197, 1201 (6th Cir. 1976); *United States v. Pandilidis*, 524 F.2d 644 (6th Cir. 1975), *cert. denied*, 424 U.S. 933, 96 S.Ct. 1146, 47 L.Ed.2d 340 (1976). Although the language in *Bain* is broad, it has been recognized that *Bain* and *Stirone* do not prevent federal courts from changing an indictment as to matters of form or surplusage. *Russell v. United States, supra*, 369 U.S. at 770, 82 S.Ct. 1038; *United States v. Hall*, 536 F.2d 313, 319 (10th Cir. 1976); *United States v. Dawson*, 516 F.2d 796, 801 (9th Cir.), *cert. denied*, 423 U.S. 855, 96 S.Ct. 104, 46 L.Ed.2d 80 (1975); *Stewart v. United States*, 395 F.2d 484, 487–89 (8th Cir. 1968); *United States v. Fruchtman*, 421 F.2d 1019, 1021 (6th Cir.), *cert. denied*, 400

U.S. 849, 91 S.Ct. 39, 27 L.Ed.2d 86 (1970); *United States v. Huff*, 512 F.2d 66 (5th Cir. 1975).

In *Gaither v. United States*, 134 U.S.App. D.C. 154, 413 F.2d 1061, 1071 (1969), this definition of an amendment prohibited by *Stirone* and *Bain*, as opposed to the concept of a variance in proof from the indictment, appears:

> An *amendment* of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by prosecutor or court after the grand jury has last passed upon them. A *variance* occurs when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment.

These definitions have been quoted with approval by several courts of appeal. *United States v. Pelose*, 538 F.2d 41, 45 n. 8 (2d Cir. 1976); *United States v. Somers*, 496 F.2d 723, 743 n. 38 (3d Cir.), *cert. denied*, 419 U.S. 832, 95 S.Ct. 56, 42 L.Ed.2d 58 (1974); *United States v. Bursten*, 453 F.2d 605, 607 (5th Cir. 1971), *cert. denied*, 409 U.S. 843, 93 S.Ct. 44, 34 L.Ed.2d 83 (1972).

■ This distinction between an amendment and a variance is critical because a variance is subject to the harmless error rule, *Berger v. United States*, 295 U.S. 78, 82, 55 S.Ct. 629, 79 L.Ed. 1314 (1935), whereas an amendment prohibited by *Stirone* and *Bain* is prejudicial per se. *United States v. Bryan*, 483 F.2d 88, 96 (3d Cir. 1973); *United States v. DeCavalcante*, 440 F.2d 1264, 1271 (3d Cir. 1971); *Gaither v. United States, supra*, 413 F.2d at 1072. Sometimes, however, there is a problem in identifying when an amendment is made to an indictment. That problem occurs when the charging terms of an indictment have not been literally changed but have been effectively altered by events at trial. *United States v. Somers, supra*, 496 F.2d at 744.

*Stirone v. United States, supra*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252, involved a "constructive" amendment. The defendant was found guilty, but the Supreme Court reversed the conviction, stating that the defendant's right to be tried only on charges presented in an indictment returned by a grand jury had been destroyed even though the indictment had not been formally changed. *Stirone v. United States, supra*, 361 U.S. at 217, 80 S.Ct. 270.

Under *Stirone*, the question to be asked in identifying a constructive amendment is whether there has been a modification at trial in the elements of the crime charged. *United States v. Somers, supra*, 496 F.2d at 744; *United States v. DeCavalcante, supra*, 440 F.2d at 1272; *United States v. Silverman*, 430 F.2d 106, 111 (2d Cir. 1970), *cert. denied*, 402 U.S. 953, 91 S.Ct. 1619, 29 L.Ed.2d 123 (1971). Such a modification would result in a constructive amendment. Of course, if a different crime was added to the charges against which the defendant had to meet, there would have been a constructive amendment. *United States v. Sir Kue Chin*, 534 F.2d 1032, 1036 (2d Cir. 1976); *United States v. Holt*, 529 F.2d 981 (4th Cir. 1975).

■ Applying this test to the present case, there clearly was a constructive amendment made to the indictment if appellant is correct in stating that felony-murder was added to the charges against which appellant had to defend at the state trial. Under Ohio law, a felony-murder conviction cannot be sustained under an indictment charging first degree murder with premeditated and deliberate malice. The Ohio Supreme Court in *State v. Ferguson*, 175 Ohio St. 390, 195 N.E.2d 794 (1964), held that although felony-murder and premeditated murder were both included in the same paragraph of the then existing first degree murder statute,[3] felony-murder and

---

**3.** Former Ohio Revised Code § 2901.01 provided as follows:

> No person shall purposely, and either of deliberate and premeditated malice, or by means of poison, or in perpetrating or at-

tempting to perpetrate rape, arson, robbery, or burglary, kill another.

> Whoever violates this section is guilty of murder in the first degree and shall be punished by death unless the jury trying the accused recommends mercy, in which case

premeditated murder constituted separate offenses. For appellant to be convicted of felony-murder he would have had to be indicted for that crime.

The question that the present case poses is whether, under the facts of this case, felony-murder was effectively added to the charges against which appellant had to defend. The district court held that there was no factual basis from which to conclude an amendment had been made to the indictment, even though the prosecutor, during the State's case, improperly tried to prove felony-murder. The district court reasoned, and on appeal appellee contends,[4] that there was no amendment to the indictment because the prosecutor's opening statement included a reading of the indictment and because the trial court's charge to the jury was only for deliberate and premeditated first degree murder and did not include a charge of felony-murder.

However, the prosecution and defense counsel throughout the State's case relied on the trial court's ruling and sought respectively to prove and negate commission of a robbery at the time of the shooting. On cross-examination, defense counsel elicited from Mrs. Dallas the statements that neither appellant nor Bell said "stick it up," that neither appellant nor Bell gave any indication that they were robbing or attempting to rob the store, that neither appellant nor Bell took anything of value in the store, and that neither appellant nor Bell acted—until the shooting—as other than normal customers.

In response, the prosecution called Henry Towns, a witness in the vicinity of the store. Towns described seeing appellant and Bell run up a street away from the area of the grocery store and enter a waiting red 1964 Cadillac, which quickly sped away from the scene. Towns further testi-fied that he saw either appellant or Bell with something under his arm and that he thought that the bar next to the Dallas grocery store had been robbed.

After brief testimony from an intervening witness, the prosecution called Gerald Ford. The prosecution's sole purpose in calling and vigorously questioning Ford was to prove a robbery. After the prosecution was granted permission to cross-examine Ford as a hostile witness, he was asked whether in the car after the shooting if appellant had admitted to his friends that in the store he told William Dallas that it was a "stickup." Ford first denied that appellant had said anything about a stickup and then asserted that he could not remember. The prosecutor read from Ford's statement, which was taken by police after he was arrested and which incriminated the appellant. Ford said that he had signed the statement but repeated his claim that he did not remember that he had stated anything about a robbery. In permitting the prosecutor to cross-examine Ford as a hostile witness, the Court gave as its "principal reason" for allowing the cross-examination the fact that the State in its opening statement contended that the killing took place during an attempted robbery.

When cross-examined by defense counsel, Ford denied that there was any conversation among the four friends in the Cadillac about an effort to rob the grocery store. Ford also testified that the statement he gave was made under pressure of possible criminal charges against him at a time when he was not free to leave the police station.

The prosecution also called two police detectives, Peter Becker, who was one of the two officers who took Ford's statement, and William Vargo, who was an officer who arrived at the scene of the crime shortly

---

the punishment shall be imprisonment for life.

Murder in the first degree is a capital crime under Sections 9 and 10 of Article 1, Ohio Constitution.

**4.** Appellee also responds to appellant's argument by stating that it is not properly before us because it was not raised in the Ohio courts and that it is a different argument than presented in the district court. Appellee's position is without merit and refuted by a review of the record. Appellant raised his objection to the constructive amendment before the Ohio courts and the district court, and it was the same objection as presented here on appeal.

after the killing. On direct examination, Becker was questioned about the nature of his interrogation of Ford to show that the statement was freely given. On cross-examination, Becker admitted that Ford never said that any of his three companions in the Cadillac on the day of the shooting ever stated to Ford that appellant and Bell had the intention of robbing the store. Vargo admitted on cross-examination that when he turned over the dead body of William Dallas, he saw that the right hand of Dallas was inches away from where his gun lay on the floor. Shortly thereafter, the prosecution stated that it would not ask that the Ford statement be formally received into evidence.

It thus clearly appears that the strategy of counsel was vitally affected by the trial court's ruling allowing the prosecution to prove felony-murder. The trial proceeded on the basis that, under the Ohio first degree murder statute, former Ohio Revised Code § 2901.01, to uphold a conviction of first degree murder, the State had to prove that appellant purposely killed another person and that appellant either killed with deliberation and premeditation or killed during the commission of a felony. *State v. Farmer,* 156 Ohio St. 214, 102 N.E.2d 11 (1951); *Robbins v. State,* 8 Ohio St. 131 (1857); Note, The Felony Murder Rule in Ohio, 17 Ohio St. L.J. 130 (1956). A major portion of the trial, during the State's case, concerned the possible robbery and not facts going to a determination of premeditation. The trial court ruling that the State could prove felony-murder was critical to defense strategy because appellant at trial claimed self-defense, which is not a defense to felony-murder.

The trial court thus permitted a constructive amendment and then, upon request of the prosecution, permitted a withdrawal of the amendment. As the prosecutor aptly put it, when he asked the trial court not to charge the jury on felony-murder, the effect was "simply to remove what basically and normally would [have] be[en] one count of the indictment." The Ohio grand jury had not put such a felony-murder count in the indictment.

## III

Because the law of a constructive amendment has developed in the context of federal court trials and the Fifth Amendment, it must be determined whether appellant's constitutional rights under the Fourteenth Amendment were violated in his state court trial. The problem stems from the fact that the rule against amendments contained in *Ex Parte Bain, supra,* 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849, and *Stirone v. United States, supra,* 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252, rests on the Fifth Amendment's guarantee of a grand jury indictment before a person can be held to answer for a capital crime. *Ex Parte Bain, supra,* 121 U.S. at 10, 13, 7 S.Ct. at 786, 788, made clear the Fifth Amendment basis for the rule:

If it lies within the province of a court to change the charging part of an indictment to suit its own notions of what it ought to have been, or what the grand jury would probably have made it if their attention had been called to suggested changes, the great importance which the common law attaches to an indictment by a grand jury, as a prerequisite to a prisoner's trial for a crime, and without which the Constitution says, "no person shall be held to answer," may be frittered away until its value is almost destroyed.

. . . [A]fter the indictment was changed it was no longer the indictment of the grand jury who presented it. Any other doctrine would place the rights of the citizen, which were intended to be protected by the constitutional provision, at the mercy or control of the court or prosecuting attorney; for, if it be once held that changes can be made by the consent or the order of the court in the body of the indictment as presented by the grand jury, and the prisoner can be called upon to answer to the indictment as thus changed, the restriction which the Constitution places upon the power of the court, in regard to the prerequisite of an indictment, in reality no longer exists.

■ The Fifth Amendment's guarantee of a grand jury indictment in cases of capital crimes, however, has never been incorporated into the Fourteenth Amendment and hence is not applicable to the states. In *Hurtado v. California,* 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232 (1884), the Supreme Court held that the Due Process Clause of the Fourteenth Amendment did not require a grand jury indictment in a prosecution by the State of California for a capital crime. While it is true that *Hurtado* once stood in a line of Supreme Court cases that refused to incorporate Bill of Rights guarantees relating to criminal procedure into the Fourteenth Amendment and while it is true that such older precedent, except for *Hurtado,* has been overruled and most of the Bill of Rights guarantees relating to criminal procedure have been incorporated into the Fourteenth Amendment as fundamental rights,[5] *Hurtado* remains good law. *Branzburg v. Hayes,* 408 U.S. 665, 688 n. 25, 92 S.Ct. 2646, 33 L.Ed.2d 626 (1972); *Alexander v. Louisiana,* 405 U.S. 625, 633, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972); *Picard v. Connor,* 404 U.S. 270, 273, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Beck v. Washington,* 369 U.S. 541, 545, 82 S.Ct. 955, 8 L.Ed.2d 98 (1962); *Saunders v. Buckhoe,* 346 F.2d 558, 559 (6th Cir. 1965).

■ In addition, even if a state adopts a grand jury system, federal constitutional requirements, binding in federal criminal cases are not binding on the states, *Alexander v. Louisiana, supra,* 405 U.S. at 633, 92 S.Ct. 1221, except with respect to the racial or national composition of grand juries. *Carter v. Jury Commission,* 396 U.S. 320, 330, 90 S.Ct. 518, 24 L.Ed.2d 549 (1970).[6] Thus, with respect to amendments, federal courts have viewed their legality as "primarily a matter of state law." *United States ex rel. Wojtycha v. Hopkins,* 517 F.2d 420, 425 (3d Cir. 1975). *See Henderson v. Cardwell,* 426 F.2d 150, 152 (6th Cir. 1970); *Stone v. Wingo,* 416 F.2d 857, 859 (6th Cir. 1969).

By statute, Ohio law allows certain amendments. Ohio Revised Code § 2941.30 at the time of appellant's trial provided, and now provides:

The court may at any time before, during, or after a trial amend the indictment, information, or bill of particulars, in respect to any defect, imperfection, or omission in form of substance, or of any variance with the evidence, provided no

---

5. *Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961), acknowledged that the right to be free from unreasonable searches and seizures had been incorporated in *Wolf v. Colorado,* 338 U.S. 25, 69 S.Ct. 1359, 93 L.Ed. 1782 (1949), and then incorporated the right to have excluded from a criminal trial any evidence illegally obtained, overruling *Wolf v. Colorado, supra,* on that point. *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), incorporated the right to the assistance of counsel and imposed the requirement to appoint counsel in criminal cases, overruling *Betts v. Brady,* 316 U.S. 455, 62 S.Ct. 1252, 86 L.Ed. 1595 (1942). *Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964), incorporated the privilege against self-incrimination and overruled *Twining v. New Jersey,* 211 U.S. 78, 29 S.Ct. 14, 53 L.Ed. 97 (1908). *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), incorporated the guarantee against double jeopardy and overruled *Palko v. Connecticut,* 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288 (1937). *Duncan v. Louisiana,* 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), incorporated the right to jury trial, and according to *Duncan, supra,* 391 U.S. at 148, 88 S.Ct. 1444, *In re Oliver,* 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948), incorporated the right to a public trial. *Klopfer v. North Carolina,* 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967), incorporated the right to a speedy trial. *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965), incorporated the right to confront opposing witnesses, and *Washington v. Texas,* 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed.2d 1019 (1967), incorporated the right to compulsory process for obtaining witnesses.

6. In *Alexander v. Louisiana,* 405 U.S. 625, 634, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972) (Douglas, J., concurring), Justice Douglas argued that *Hurtado v. California,* 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232 (1884), did not support the proposition that federal constitutional requirements were not obligatory once a state chose to adopt the grand jury system. Justice Douglas cited *Carter v. Jury Commission,* 396 U.S. 320, 90 S.Ct. 518, 24 L.Ed.2d 549 (1970), which did apply federal constitutional requirements with respect to the racial selection of members of a grand jury, in support of his position that once a state chose to adopt a grand jury system, federal constitutional requirements were applicable.

change is made in the name or identity of the crime charged. If any amendment is made to the substance of the indictment or information or to cure a variance between the indictment or information and the proof, the accused is entitled to a discharge of the jury on his motion, if a jury has been impaneled, and to a reasonable continuance of the cause, unless it clearly appears from the whole proceedings that he has not been misled or prejudiced by the defect or variance in respect to which the amendment is made, or that his rights will be fully protected by proceeding with the trial, or by a postponement thereof to a later day with the same or another jury. In case a jury is discharged from further consideration of a case under this section, the accused was not in jeopardy. No action of the court in refusing a continuance or postponement under this section is reviewable except after motion to and refusal by the trial court to grant a new trial therefor, and no appeal based upon such action of the court shall be sustained, nor reversal had, unless from consideration of the whole proceedings, the reviewing court finds that the accused was prejudiced in his defense or that a failure of justice resulted.

In the present case the Ohio Revised Code § 2941.30 would not permit an amendment that changed the indictment to add another, different crime. *See Breinig v. State,* 124 Ohio St. 39, 42–43, 176 N.E. 674 (1931); *Hasselworth v. Alvis,* 76 Ohio Law Abs. 238, 143 N.E.2d 862 (1956); *Horsley v. Alvis,* 281 F.2d 440 (6th Cir. 1960). In no way was Ohio Revised Code § 2941.30 involved in the present case. According to *Breinig,* such a far reaching amendment as occurred in the present case would violate fundamental laws, cloaking the defendant with the right under the Ohio State Constitution to "demand the nature and cause of the accusation against him." 124 Ohio St. at 42–43, 176 N.E.2d at 676.

More important to appellant's petition for a writ of habeas corpus is the fact that an amendment to an indictment in certain cases can implicate rights under the United States Constitution which are applicable to the states, such as fair notice of criminal charges, double jeopardy, and effective assistance of counsel. *See United States ex rel. Wojtycha v. Hopkins, supra,* 517 F.2d 425. This Court in *United States v. Pandilidis, supra,* 524 F.2d at 648, recognized that:

. . . the rules governing the content of indictments, variances and amendments are designed to protect three important rights: the right under the Sixth Amendment to fair notice of the criminal charge one will be required to meet, the right under the Fifth Amendment not to be placed twice in jeopardy for the same offense, and the right granted by the Fifth Amendment, and sometimes by statute, not to be held to answer for certain crimes except upon a presentment or indictment returned by a grand jury.

There is no question that the Fourteenth Amendment encompasses the right to fair notice of criminal charges. The Supreme Court in *In re Oliver,* 333 U.S. 257, 273, 68 S.Ct. 499, 92 L.Ed. 682 (1948), in dealing with the Due Process Clause of the Fourteenth Amendment, stated that:

A person's right to reasonable notice of a charge against him, and an opportunity to be heard in his defense—a right to his day in court—are basic in our system of jurisprudence. . . .

Likewise, in *Cole v. Arkansas,* 333 U.S. 196, 201, 68 S.Ct. 514, 517, 92 L.Ed. 644 (1948), the Supreme Court declared that:

No principle of procedural due process is more clearly established than that of notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal.

*See United States v. Maselli, supra,* 534 F.2d 1197, 1201; *United States v. Beard,* 436 F.2d 1084, 1086–88 (5th Cir. 1971); *Salinas v. United States,* 277 F.2d 914, 916 (9th Cir. 1960). Also, under the Fourteenth Amendment, states are obliged to observe

 

the prohibition against double jeopardy, *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), and allow counsel sufficient time to prepare a defense. *Powell v. Alabama,* 287 U.S. 45, 59, 53 S.Ct. 55, 77 L.Ed. 158 (1932).

■ To allow the prosecution to amend the indictment at trial so as to enable the prosecution to seek a conviction on a charge not brought by the grand jury unquestionably constituted a denial of due process by not giving appellant fair notice of criminal charges to be brought against him.[7] *See DeJonge v. Oregon,* 299 U.S. 353, 362, 57 S.Ct. 255, 81 L.Ed. 278 (1937). As a matter of law, appellant was prejudiced by the constructive amendment. *See Stirone v. United States, supra,* 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252; *United States v. DeCavalcante, supra,* 440 F.2d 1264; *Gaither v. United States, supra,* 134 U.S.App.D.C. 154, 413 F.2d 1061. The fact that the charge to the jury only included first degree premeditated murder according to the indictment could not cure the prejudice to the appellant. Furthermore, an amendment cannot properly be justified by a prosecuting attorney on the ground that defense counsel should have sought a bill of particulars.[8] *Russell v. United States, supra,* 369 U.S. at 769–70, 82 S.Ct. 1038; *United States v. Norris, supra,* 281 U.S. at 622, 50 S.Ct. 424.

The order of the district court is reversed, and the case is remanded to the district court with instructions to grant the writ of habeas corpus, conditioned on the State's right to retry the appellant. *See Price v. Georgia,* 398 U.S. 323, 90 S.Ct. 1757, 26 L.Ed.2d 300 (1970); *Green v. United States,* 355 U.S. 184, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957).

---

**7.** Although not presented by the facts of this case, double jeopardy implications could have been included because appellant's conviction for second degree murder would not preclude a conviction for felony-murder. *Lowther v. Maxwell,* 347 F.2d 941 (6th Cir. 1965); *State v. Trocodaro,* 40 Ohio App.2d 50, 317 N.E.2d 418 (1973).

**8.** In its unreported opinion, *State v. Watson,* No. 33036, June 27, 1974, the Cuyahoga County, Ohio, Court of Appeals stated that the conduct of the trial could be upheld on the basis that the State could prove the lesser included offense of involuntary manslaughter in first degree premeditated murder. While it is true that at the time of appellant's trial, former Ohio

Revised Code § 2901.06 included involuntary manslaughter, which the County Court of Appeals defined as unintentional killing resulting from the commission of an illegal act, there is a constitutional difference between showing an illegal act as part of the surrounding circumstances of first degree premeditated murder and seeking to convict a defendant for felony-murder under an indictment for first degree premeditated murder. In the latter situation, a defendant has not been given fair notice. As the present case illustrates, an illegal act is not an element of first degree premeditated murder.