916 F.2d 712
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Jerome GOLOCHOWICZ, Petitioner-Appellant,
v.
Henry GRAYSON, Warden, Charles Egeler Correctional Facility,
Respondent-Appellee.
 No. 89-2071.
 United States Court of Appeals, Sixth Circuit.
 Oct. 22, 1990.
 
 Before NATHANIEL R. JONES and RALPH B. GUY, Jr., Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Petitioner, Jerome Golochowicz, appeals from the denial of his habeas corpus petition. Golochowicz sought habeas relief under a number of theories, chief of which was that he was convicted of felony-murder after a trial in which the principal prosecutive thrust was premeditated murder. Upon a review of this issue as well as petitioner's other claims of error, we conclude that the denial of the writ was proper and we affirm.
 
 I.
 
 2
 On November 1, 1976, Donald Mitchell was found dead at his home, having been strangled to death. There were no eyewitnesses to the killing. Petitioner was ultimately arrested and charged with the murder. Although the evidence was circumstantial, it was strong. Golochowicz's fingerprints were found in Mitchell's condominium and Golochowicz also was in possession of, and sold a number of, items taken from the victim's house at the time of the murder, including a yellow Lincoln automobile. Some of Golochowicz's cronies to whom he offered to sell the stolen goods testified against him. Petitioner also used credit cards taken from the victim and cashed checks taken from the victim's stolen checkbook.
 
 
 3
 At trial, the prosecution, over objection, also introduced one other telling piece of evidence. Dennis O'Clare, one of the persons to whom petitioner first offered the stolen goods, testified that on November 4, 1976, Golochowicz offered him a Sony television set. In order to get it, however, O'Clare had to accompany Golochowicz to a house where O'Clare discovered a dead body. The apparent cause of death was strangulation by an electrical cord in much the same manner as Mitchell had been strangled. After they looted the house, Golochowicz admitted to O'Clare that he had killed the man in the house and described how he did it, although later denied that he did it.
 
 
 4
 After being found guilty of first degree murder, Golochowicz appealed his conviction and, although it was affirmed by the Michigan Court of Appeals,[1] it was later reversed by the Michigan Supreme Court.[2] In a 4-3 decision, the Michigan Supreme Court concluded that the evidence as to the second killing should not have been admitted into evidence under the "similar acts rule."
 
 
 5
 Golochowicz was re-tried and again found guilty. At the second trial, the prosecution, of course, had to proceed without the benefit of the jury learning of the second murder. It appears clear that the prosecution again was proceeding on a premeditated murder theory. At the end of the case, however, the prosecution asked for and received, over objection, a felony-murder instruction. The jury found Golochowicz guilty of felony-murder.
 
 
 6
 This second conviction was appealed and upheld by the Michigan Court of Appeals.[3] The Michigan Supreme Court declined review.
 
 II.
 
 7
 After Golochowicz's first conviction was reversed and the case remanded, a new preliminary examination was held and Golochowicz was bound over for trial. The prosecution then filed an information charging that petitioner "did murder Donald Havens Mitchell; contrary to Section 750.316 of the Compiled Laws of 1970, as amended, M.S.A. 28.548. (Maximum Penalty--Life)." (App. 12). By citing Mich.Comp.Laws Ann. Sec. 750.316, it is clear that murder in the first degree was charged.[4] In 1976, Mich.Comp.Laws Ann. Sec. 750.316 read in pertinent part:
 
 
 8
 All murder which shall be perpetrated by means of poison, or lying in wait, or any kind of wilful, deliberate and premeditated killing, or which shall be committed in perpetration, or attempt to perpetrate ... larceny of any kind, extortion or kidnapping ... shall be murder of the first degree....
 
 
 9
 Under Michigan law, as the state trial judge properly instructed the jury,[5] in order to find a defendant guilty of murder in the first degree, it is first necessary that the jury find all of the elements of second degree murder. These include that the defendant "intended to kill, that is he intended to do great bodily harm, or that he committed a wanton and willful act, the natural tendency of which is to cause death or great bodily harm." (App. 102). This element, commonly referred to as the "malice" element, is necessary for a felony-murder conviction in Michigan since the Michigan Supreme Court's decision in People v. Aaron, 409 Mich. 672 (1980).[6]
 
 
 10
 Thus, when petitioner was charged under Mich.Comp.Laws Ann. Sec. 750.316, he was on notice that he was charged with an intentional killing with malice (second degree murder), which was aggravated to first degree murder by either premeditation or the commission of one of the felonies enumerated in section 750.316. Larceny is a section 750.316 enumerated felony. He also knew something else, however. He knew from the first trial that the larceny would be an important element of the prosecution's circumstantial case, since it was his possession of the victim's stolen goods and his attempts to peddle them that formed a substantial part of the State's case. Since it was clear that a larceny had been committed, and likely that a jury would conclude that a strangulation killing was a direct result of someone acting with an intent to kill, petitioner, by way of defense, attempted to convince the jury that he was not involved at all. Since no one could directly connect petitioner with the crime, this was not a defense bereft of any possibility of success. Thus, the contours of his defense were not shaped by the particular aggravating circumstance on which the prosecution might choose to rely in attempting to prove first degree murder.
 
 
 11
 In arguing that the trial was fatally flawed by the prosecution switching theories at the end of the trial, petitioner relies primarily on two cases, Watson v. Jago, 558 F.2d 330 (6th Cir.1977), and Givens v. Housewright, 786 F.2d 1378 (9th Cir.1986). Although we find both of these cases apposite, we do not find them controlling under the facts here.
 
 
 12
 In Watson, defendant Watson was involved in the alleged attempt to rob a grocery store, which resulted in Watson shooting and killing the owner, the latter fact not being in dispute. Watson, in a proceeding under Ohio law, was indicted by a grand jury and charged with premeditated first degree murder only. The prosecution, in his opening statement said: "The evidence ... will convince you ... that ... Watson ... did ... maliciously, premeditatively and while in the act of a robbery murder Willie Dallas." 558 F.2d at 332. Defense counsel immediately made a motion to dismiss the indictment because of the reference to a robbery.[7] The motion was denied.
 
 
 13
 There are three factors which distinguish Watson from our case. First, in Watson there was no robbery and it was not at all clear that even an attempted robbery was involved. In our case there is no dispute that a larceny occurred. Second, Watson was admittedly the trigger man and he claimed self defense, which would be a defense to premeditated murder, but not felony-murder if a robbery was in fact being committed or attempted. Third, existing Ohio case law provided that:
 
 
 14
 [A] felony-murder conviction cannot be sustained under an indictment charging first degree murder with premeditated and deliberate malice. The Ohio Supreme Court in State v. Ferguson, 175 Ohio St. 390, 195 N.E.2d 794 (1964), held that although felony-murder and premeditated murder were both included in the same paragraph of the then existing first degree murder statute, felony-murder and premeditated murder constituted separate offenses.
 
 
 15
 Watson, 558 F.2d at 334-335 (footnote omitted).
 
 
 16
 Even if there were no Ohio case law, it is clear that Watson was entitled to know whether he should beat the self-defense drum, which could save him from a premeditated murder conviction, or concentrate his efforts on showing no robbery was contemplated, which could get him off the felony-murder hook. Golochowicz, as we have explained, was not on the horns of such a dilemma here.
 
 
 17
 Givens v. Housewright involved a first degree murder prosecution in which the trial judge instructed the jury on two types of first degree murder: murder by torture and premeditated murder. The significant difference between the two is that in a murder-by-torture prosecution there need be no intent to kill. Givens maintained the information did not give him adequate notice that he would face a charge of murder by torture. Although the state courts and the federal district court rejected this argument, the Ninth Circuit agreed with Givens and granted his habeas petition.
 
 
 18
 Putting aside whether we agree with the Ninth Circuit conclusion, the difference between Givens and the instant case is clear. Givens structured a defense on no intent to kill, only to have the rug pulled out from under him at the conclusion of the case. Golochowicz was not placed in a similar position.
 
 
 19
 In reaching our conclusion that no error occurred here which entitles Golochowicz to habeas relief, we emphasize that our habeas review of this state court decision is " 'the narrow one of due process, and not the broad exercise of supervisory power that [a state] would possess in regard to [its] own trial court.' " Donnelly v. DeChristoforo, 416 U.S. 637, 642 (1974) (footnote omitted) (quoting from DeChristoforo v. Donnelly, 473 F.2d 1237, 1240 (1st Cir.1973)). This point is well illustrated by the reversal of Golochowicz's first conviction by the Michigan Supreme Court. The court was obviously concerned with the misuse of the "separate crimes" doctrine and, in addition to overturning Golochowicz's conviction, used its supervisory powers to promulgate a prophylactic rule for the future. Whether a federal court in habeas proceeding would have been compelled to reach the same result is open to serious question.
 
 
 20
 Although the great number of habeas cases decided by the Supreme Court and the lower federal courts has resulted in a body of law which can only be described as Byzantine,[8] there is one concept that remains constant. Fundamental fairness is the ultimate test in evaluating a due process claim. It is a test that cuts both ways. For example, in Murray v. Carrier, 477 U.S. 478 (1986), the Court applied the concept of fundamental fairness and overlooked procedural irregularities.[9] Cutting the other way is the view expressed by at least some members of the Court that fundamental fairness should require the federal courts to entertain habeas petitions "only where the prisoner supplements his constitutional claim with a colorable showing of factual innocence." Kuhlmann v. Wilson, 477 U.S. 436, 454 (1986) (dealing with successive habeas petitions).
 
 
 21
 Against this backdrop, we find no absence of fundamental fairness insofar as Golochowicz's trial was concerned. The original charge was never limited to premeditated murder and he was not deprived of his defense by the prosecutor's change of emphasis.
 
 III.
 
 22
 Petitioner also raises three other arguments: (1) the court lacked jurisdiction to try petitioner for felony murder after a bindover for murder, (2) ineffective assistance of counsel, and (3) denial of a fair trial due to testimony being introduced that he was given his Miranda rights, although he made no statment to the police.[10] Upon review, we find no merit to any of these arguments. The district judge addressed all of these issues, and we agree with his resolution and adopt it as this court's opinion.
 
 
 23
 AFFIRMED.
 
 
 
 [1]
 People v. Golochowicz, 89 Mich.App. 57 (1979)
 
 
 [2]
 People v. Golochowicz, 413 Mich. 298 (1982)
 
 
 [3]
 People v. Golochowicz, Docket No. 70322 (unpublished)
 
 
 [4]
 Mich.Comp.Laws Ann. Sec. 750.317 covers second degree murder
 
 
 [5]
 Petitioner does not object to the language of the instructions given, only to the fact that a felony-murder theory was allowed to go to the jury
 
 
 [6]
 Prior to Aaron, Michigan applied the common-law felony-murder rule. Aaron was not made to apply retroactively. Id. at 734. The Aaron rule was applicable to petitioner's second trial in 1983
 
 
 [7]
 Under the then existing Ohio first degree murder statute, premeditated murder and felony murder were both included in the first degree murder statute
 
 
 [8]
 Justice Stevens opined that the Court "has lost its way in a procedural maze of its own creation." Smith v. Murray, 477 U.S. 527, 541 (1986) (Stevens, J., dissenting)
 
 
 [9]
 "Accordingly, we think that in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Murray v. Carrier, 477 U.S. 478, 496 (1986)
 
 
 [10]
 The jury was never told he made no statement