# State of Vermont v. Henry Beckenbach

[397 A.2d 79]

No. 82-77

Present: Barney, C.J., Daley, Larrow, Billings and Hill, JJ.

Opinion Filed November 13, 1978

Motion for Stay of Mandate Denied December 4, 1978

*John A. Rocray,* Windham County State's Attorney, and *Linda Levitt,* Deputy State's Attorney, Brattleboro, for Plaintiff.

*James L. Morse,* Defender General, *Charles S. Martin,* Appellate Defender, *David W. Curtis,* Acting Appellate

Defender, and *David Rath* and *William A. Nelson,* Law Clerks (On the Brief), Montpelier, for Defendant.

**Barney, C.J.** The defendant was prosecuted for breaking and entering in the nighttime. At the time of his arrest he gave an incriminating statement to the police. Suppression of that statement was denied and, on trial, the jury found him guilty.

His appeal to this Court raises two issues. The first contends that his statement to the police ought not to have been available against him, since a waiver of his rights under the doctrine of *Miranda* v. *Arizona,* 384 U.S. 436 (1966) was not sufficiently established. Special leave was requested for the presentation of the second issue. It related to a claim of improper exclusion of evidence from the defendant relevant to his intent to commit larceny.

The first issue is grounded on the physical condition of the defendant at the time of his arrest. He and his friends were discovered in a Brattleboro house by the daughter of the owners. She ran next door to the home of a policeman for assistance. He called police headquarters for support and then entered the kitchen of the house involved.

Two of the intruders came into the darkened kitchen carrying pillowcases containing items from the house. One was carrying a length of pipe. This one was subdued by the officer and turned out to be the defendant. On trial, the officer testified that the defendant appeared to have been drinking and smelled of beer. He looked to be on the verge of vomiting. Another officer took the defendant to the police station. The defendant requested cigarettes and was given both cigarettes and coffee.

About an hour had passed since the defendant was picked up at the scene of the criminal episode. It was then, for the first time, the defendant was given the Miranda warnings and talked with a police captain in the station. According to the findings made at the suppression hearing, the interview was initiated at the request of the defendant. His statement was taken down by the officer in longhand. After reading the statement and initialing some corrections, the defendant signed the statement. His receipt of the Miranda warnings and right to counsel, as well as a waiver of his right to refuse

interrogation, were all evidenced by a printed form signed by the officer and in two places by the defendant.

The police officers who observed the defendant from the time he was taken to the police station until he signed the written statement testified that there was an odor of alcoholic beverages about the defendant, but that he walked normally, spoke coherently, answered questions intelligently and had no difficulty recounting the events of the evening. He was described as polite and cooperative.

The defendant took the stand and testified. Both in his testimony and his written statement he stated that he and his friends had started drinking early in the morning and had consumed about two six packs of beer, plus several shots of whiskey, then, later, some more beer. He also testified that he had smoked a little marijuana and taken a couple of pills he called "downers." He described his condition as slowed down, like being in a mist, and said he was pretty drunk. This was his version of his condition at the time the house was entered.

The issue of his competency to waive his Miranda rights was tested by a motion to suppress heard some two months before trial. An evidentiary hearing was had and findings of fact made. The judge reviewed the evidence already recited and incorporated it into findings. Based on those findings he found the waiver knowingly and voluntarily made. He found that the defendant was eighteen years of age and had eleven years of education. The defendant was found to be quiet, coherent and cooperative. He was found to have no problem in understanding events and signed in a legible hand with no characteristics of severe alcoholic impairment.

At the trial the written statement was received into evidence without objection through the testimony of the officer that took it down. When the case went to the jury the issue of the voluntariness of the defendant's statement, based on all of the evidence, including that of his age, circumstances and condition of intoxication, was submitted to the jury under instruction.

Now the issue is here. From the defendant's point of view, the measure of his burden has increased. He must persuade this Court that the circumstances surrounding his

giving of the statement were such that, as a matter of law, no reasonable jury could find that the evidence, viewed in any fashion, could satisfy the legal standard for voluntariness. Even having in mind the "heavy burden" on the prosecution to establish voluntariness, *Miranda* v. *Arizona, supra*, 384 U.S. at 475; see also C. Whitebread, *Constitutional Criminal Procedure* § 12.13, at 181 (1978), it is clear that there is sufficient evidentiary support for a finding that the statement was voluntary to prevent a contrary determination to be made as a matter of law. Its admission into evidence is sustained.

The second claim of error centers around the testimony of the defendant at the trial during direct examination. The questioning related to the defendant's disavowal of his intent to commit larceny, or, alternatively, his aiding and assisting the others with knowledge of their criminal designs. His personal claim of lack of intent or involvement he succeeded in getting before the jury. When he was inquired of about statements of the others to him relative to the purposes and objects of entering the darkened house, challenges to his testimony began.

For the most part, the rulings came down as prospective cautions against hearsay, and most of the answers to challenged questions were allowed to stand. The defendant claimed that evidence of the statements were not being offered for the truth of the matters asserted in them, and therefore were not hearsay. After several attempts he did get before the jury the evidence that he understood that the actions of the group amounted to nothing more than "just foolin' around."

Whether what he wanted to develop from the testimony would have enlarged upon that or not is not known, and was not made known to the trial court. Based upon what evidence was received, the argument relating to his lack of larcenous intent and his lack of knowing participation in any plan to steal was made to the jury and reflected in the charge.

As has been noted, whether there remained any more evidence of sufficient weight to support a claim of prejudicial error through improper exclusion has never been demonstrated here or below. The burden to make that showing rested on the defendant. *State* v. *Kelly*, 131 Vt. 582, 587, 312 A.2d 906 (1973).

Certainly he did make known to the lower court that he sought the benefit of an exception to the exclusionary hearsay rule. But, since this was part of his affirmative case, to put the lower court in error, he was bound to do more. As noted in the Reporter's Note to V.R.Cr.P. 26, referencing V.R.C.P. 43(c), his obligation was to make an offer of proof delineating the testimony he expected the witness to give and relating it to the rule of law governing its admissibility he had already put forward. This is the requirement of *State* v. *Winters,* 102 Vt. 36, 61, 64, 145 A. 413 (1929), which says that the purpose of an offer is to apprise the trial court of the nature of the evidence proposed to be introduced, in order that it may know the precise question to be passed upon.

The burden was upon the defendant to produce in this Court a record from which it affirmatively appears that error was committed in the court below. *State* v. *Morrill,* 127 Vt. 506, 513, 253 A.2d 142 (1969). It is part and parcel of that obligation to establish that the issue involved was presented to the trial court in a manner which gave that court the opportunity to understandingly pass on the question. *State* v. *Lucia,* 104 Vt. 53, 58, 157 A. 61 (1931). The failure to make an offer of proof foreclosed the establishment of error below in this case.

*Judgment affirmed.*