**State of Vermont v. Bernard Moses LaPlante**

[449 A.2d 955]

No. 41-81

Present: **Barney, C.J., Billings, Hill, Underwood and Peck, J.**

Opinion Filed July 7, 1982

406

*Michael J. Sheehan,* Windsor County State's Attorney, and *William S. Bos,* Deputy State's Attorney, White River Junction, for Plaintiff-Appellee.

*Ernest P. Sachs,* Norwich, for Defendant-Appellant.

**Barney, C.J.** The defendant appeals his conviction of simple assault, claiming that the trial court abused its discretion in excluding seven out of ten prior criminal convictions from his attempt to impeach the State's key witness.

The defendant and a companion were each charged with aggravated assault under 13 V.S.A. § 1024(a)(2), following a shooting incident at the home of an acquaintance in Sharon. The defendant's companion pled guilty to simple assault and became the State's main witness at the defendant's trial. He testified that the defendant had done all the shooting, which the defendant denied.

In an attempt to impeach the credibility of the State's witness, the defendant sought to introduce evidence of the witness' prior criminal convictions. While the trial court agreed to admit convictions of breaking and entering with intent to commit larceny, breaking and entering in the nighttime, and breaking and entering in the daytime with intent to commit a felony, it refused to allow the use of convictions of possession of harmful drugs, carrying a dangerous weapon, possession of burglary tools, possession of a hypodermic needle, receiving stolen property, burglary (auto), and larceny.

The defendant makes two claims of error. First he argues that the trial court was wrong as a matter of law in its determination that seven out of the ten convictions which he sought to have admitted were not crimes involving moral turpitude. Secondly, he maintains that since the convictions were for crimes involving moral turpitude, they were relevant under *State* v. *Gardner,* 139 Vt. 456, 460–61, 433 A.2d 249, 251–52 (1981). We find that even if error occurred, it was not so prejudicial as to require reversal, and affirm.

*State* v. *Gardner, supra,* changed the rule in *State* v. *Manning,* 136 Vt. 436, 392 A.2d 409 (1978). Involved is the statute 12 V.S.A. § 1608:

> The conviction of a crime involving moral turpitude within fifteen years shall be the only crime admissible in evidence given to affect the credibility of a witness.

In *Gardner* we held that the statute establishes an outer limit to admissibility, within which such crimes involving moral turpitude shall be received, subject only to rejection by the trial court on the ground that the prejudicial impact would improperly overwhelm its probative value with respect to credibility. The discretion exercised by the trial judge in that connection is, of course, to be honored unless it is established that the exclusion represents an irregular or unreasonable employment of judicial authority. *Grow* v. *Wolcott,* 123 Vt. 490, 492, 194 A.2d 403, 404–05 (1963).

However, the exclusion of the convictions with which we are here concerned did not rest on the test of prejudice, but on the more troublesome and less certain determination of their characterization as involving moral turpitude. Vermont case law defines a crime involving moral turpitude as one based on conduct not only socially undesirable, but, by its very nature, base or depraved. *State* v. *Fournier,* 123 Vt. 439, 440, 193 A.2d 924, 925 (1963). This definition is said to mirror the distinction between crimes *mala in se* and *mala prohibita, id.,* but the relevant inquiry is whether the crime indicates testimonial reliability.

It must be conceded that the whole question is not free from difficulty, and different Courts have reached differ-

ent conclusions in dealing with it. . . . The issue always is the truth of the witness' testimony. In other words, is the witness devoid of moral perception, such a person as would regard lightly the obligations of an oath to tell the truth? In judging a man's moral fiber, his previous conduct, covering a reasonable time before the inquiry, undoubtedly has a real and substantial bearing upon the question. . . . [N]o line can be definitely established; that is to say, any line undertaken to be established would be, in its nature, arbitrary; and if such is to be established, it is a question for the Legislature and not for the Court.

*Burgess* v. *State,* 161 Md. 162, 171, 155 A. 153, 157 (1931), *quoted in* IIIA Wigmore, Evidence § 980, at 832–33 (J. Chadbourn ed. 1970).

Even so explained the term "moral turpitude" remains amorphous at best. No clear guidelines have been developed for its application in the trial courts of this jurisdiction, or in other jurisdictions where it prevails as the standard for admissibility. See, e.g., *State* v. *Morgan,* 541 S.W.2d 385 (Tenn. 1976); *Gholston* v. *State,* 338 So. 2d 454 (Ala. Crim. App. 1976); Sowards, *Annual Survey of South Carolina Law, Evidence,* 33 S.C.L. Rev. 93 (1981). The resulting litany of lower court decisions and appeals creates a catalogue in each state of crimes involving moral turpitude, a result seriously questioned as a waste of judicial energy, given the magnitude of the problem, and the minimal guidance given to other tribunals in evaluating their own list of crimes. McCormick, Evidence § 43, at 86 (E. Cleary ed. 1972).

Still, despite the problem in applying the moral turpitude standard consistently from case to case and crime to crime, and notwithstanding the existence of some authority to replace it with a standard more certain in definition and more favorable to administration, see Fed. R. Evid. 609; Unif. R. Evid. 609 (1974) (now adopted in eighteen jurisdictions), our legislature has not yet seen fit to amend the statute, and it remains the law in Vermont. Courts are thus left to their own devices to sort out those crimes that involve moral turpitude from those that do not. We therefore turn to examine

each of the offenses excluded by the trial court to see if its rulings can be supported under law. *Ricci* v. *Bove's Executor*, 116 Vt. 335, 339, 75 A.2d 682, 685 (1950).

With regard to the four prior convictions for crimes which are possessory in nature, we cannot say that the trial court's decision to exclude them amounted to error. Although the penal codes of the jurisdictions in which these offenses were committed brand each of them as "criminal," all involve the possession of something which, in other situations, has redeeming social value. Nothing about the mere possession of any of these items is inherently evil.

As to the receipt of stolen property, and burglary of an automobile, we believe that under some circumstances these offenses will involve moral turpitude, and under other circumstances they will not. But cf. *State* v. *Manning, supra*, 136 Vt. at 439, 392 A.2d at 411 (stating in dicta that "burglary" involves moral turpitude as a matter of law). Such qualifying circumstances must be affirmatively shown by the party seeking to have the convictions admitted into evidence, and since no such showing was made by the defendant in this case we will not find error.

But we must agree with the defendant that the trial court's exclusion of the witness' prior conviction of larceny on the ground that it was not a crime involving moral turpitude was plainly error. Our larceny statutes incorporate the common law crime of stealing which, by definition, includes the element of wrongful intent to take and keep the property of another. *State* v. *Hanson*, 141 Vt. 228, 446 A.2d 372 (1982). This alone makes the crime inherently base, and the trial judge was wrong to withhold his discretion and exclude it as a matter of law.

A trial court's error will not result in reversal, however, unless prejudice to the defendant results. No prejudice is found here. Even if the trial court had exercised its discretion in favor of admission, which we assume purely arguendo in light of the fact that the conviction was ten years old and carried only a 30-day sentence, the introduction of this

prior conviction would likely have added little to the impeachment of a witness who had already been discredited.

■ In his opening statement defense counsel identified the witness as "Too Tall Milem, whos [sic] already pleaded guilty to this same incident and has a criminal record you'll see longer than any of us can fathom. . . ." As the trial continued Milem was called to testify, and the guilty plea was raised on direct examination by the State. Defense counsel then cross-examined the witness on it, and at the same time raised the three prior convictions for breaking and entering which had been ruled admissible. His closing argument focused almost exclusively on the witness' credibility ("It's basically a question of [LaPlante's] word against Milem's word . . . ."), and the witness' criminal record was repeatedly mentioned with the suggestion that it might be longer than the three prior convictions he had admitted to on the stand. Every possible inference that the witness' testimony was unworthy of belief was wrung out of the evidence in this case, and it strains good reason to suggest that the introduction of one more prior conviction would have made a difference.

*Judgment affirmed.*