Michael Lee CARMAN, Appellant,

v.

STATE of Alaska, Appellee.

No. 5503.

Court of Appeals of Alaska.

Jan. 28, 1983.

Dick L. Madson, Cowper & Madson, Fairbanks, for appellant.

Steven J. Call, Asst. Dist. Atty., Harry L. Davis, Dist. Atty., Fairbanks, Elizabeth H. Sheley, Asst. Atty. Gen., Office of Special Prosecutions and Appeals, Anchorage, and Wilson L. Condon, Atty. Gen., Juneau, for appellee.

## OPINION

Before BRYNER, C.J., SINGLETON, J., and JOHNSTONE, Superior Court Judge.*

SINGLETON, Judge.

Michael Carman was convicted of first-degree murder, former AS 11.15.010, but his conviction was reversed on appeal. *Carman v. State,* 604 P.2d 1076 (Alaska 1979). On retrial he was convicted of first-degree murder, again, on the theory that he, either personally or as an accomplice of Anthony Boyd, purposely killed Mark Johnson during the perpetration of a robbery. Carman was also convicted of the armed robbery of Johnson, former AS 11.15.240, AS 11.15.295, but was acquitted of premeditated first-degree murder.

Carman now appeals challenging both his conviction and sentence. He argues that the court erred by failing to recuse after the first trial, failing to dismiss the indictment, admitting certain evidence, and giving certain instructions to the jury.

## FACTS

Anthony Boyd contracted to purchase cocaine from Mark Johnson and agreed to travel to Johnson's residence, in Johnson's car, to close the transaction. Carman, one of Boyd's roommates, agreed to accompany Boyd and Johnson. At Boyd's suggestion, Carman armed himself with a borrowed .45 caliber handgun. Carman knew Boyd had a .44 magnum handgun. Boyd allegedly

told Carman the guns were for protection against a possible robbery by Johnson and his friends. En route to Johnson's house, Johnson was killed. He was shot with both the .45 and .44 caliber handguns. Carman denied shooting Johnson. Boyd ultimately confessed and exonerated Carman from any responsibility. The state offered evidence that Carman admitted to a number of witnesses that "we" killed Johnson and told others how it feels to kill a man.

Before his second trial, Carman made several motions. He moved to disqualify Judge Hodges for cause. The motion was denied. The chief justice then appointed Judge Warren Taylor to review the order, AS 22.20.020(c), and affirmed Judge Hodges' decision.

Carman filed motions to produce the victim's body, car, clothing, laboratory test results of tissue samples taken from the victim, and two pieces of cloth torn from the victim's shirt found at the murder scene. Judge Hodges denied all of these motions. In addition, Carman moved to dismiss the indictment based on the state's failure to preserve the pieces of evidence that were the subject of his motions to produce. Judge Hodges denied this motion without prejudice, stating that he would allow a later showing by Carman that the absence of the evidence prejudiced his defense.

Carman also moved for a protective order to prevent the state from informing the jury that it was sitting in a retrial. Originally, Judge Hodges granted this motion, but prior to jury selection, he reversed that decision at the request of the state. The state and defense counsel approved a cautionary instruction informing the jury that they were sitting in a retrial.

Carman objected to the state's announced intention to introduce a tape of his testimony from the first trial as part of the state's case-in-chief. The court ruled that the prior testimony was admissible, but comments

---

* Johnstone, Superior Court Judge, sitting by assignment made pursuant to article IV, section 16 of the Constitution of Alaska.

by the previous court would be excluded at Carman's request.

## JURY INSTRUCTIONS

Carman objects to the instructions on felony murder and accomplice liability. He contends that he could not be guilty of felony murder unless he personally intended Johnson's death. He relies on *Gray v. State,* 463 P.2d 897 (Alaska 1970). He does not contend that the jury instructions sepa-rately defining robbery, felony murder, and accomplice liability incorrectly set out Alaska law when viewed in isolation. We have independently evaluated those instructions and conclude that the instructions considered separately are adequate regarding felony murder, *see Gray v. State,* 463 P.2d at 906, and accomplice liability, *see Hensel v. State,* 604 P.2d 222, 233–34 (Alaska 1979). Nevertheless, when read together, Carman argues, the instructions[1] are rhetorically

1. The instructions in question are numbers 9, 10, 11, 13, 19, 20, and 24.

INSTRUCTION NO. 9:

The law applicable to the crime of murder in the first degree as charged in Count I of the Indictment in this case is as follows:

A person who, being of sound memory and discretion, *purposely,* and either of deliberate and premeditated malice or in perpetrating or in attempting to perpetrate a robbery, *kills* another is guilty of murder in the first degree.

The material allegations of the Indictment and the essential elements of the crime of murder in the first degree, each of which the State must prove beyond a reasonable doubt before you may find the defendant, Michael Lee Carman, guilty of murder in the first degree as charged, are:

1. That on or about the 22nd day of October, 1976, at or near Fairbanks, Alaska, Michael Lee Carman did proximately cause the death of Mark Dale Johnson by shooting said Mark Dale Johnson with a handgun;

2. That at the time and place alleged, Michael Lee Carman *purposely killed* Mark Dale Johnson; and

3. That at the time and place alleged, Michael Lee Carman killed Mark Dale Johnson with deliberate and premeditated malice, or in perpetrating or in attempting to perpetrate a robbery.

(Emphasis added.)

INSTRUCTION NO. 10:

To constitute murder in the first degree as charged in the Indictment in this case, the *intentional killing* must be the result either of deliberation and premeditation or of perpetration or an attempt to perpetrate a robbery.

Deliberation means to take into consideration and to reflect upon the preconceived design and *intent to kill,* to turn the idea over in the mind, to give second thought to the realization of or reasons for or against the idea of killing another person. Premeditation means to deliberate prior to the act of killing.

The law does not prescribe, standardize, or attempt to measure the amount of time to be used in the consideration of the preconceived design and *intent to kill* prior to the act of killing before such consideration may truly be said to constitute deliberation and pre-meditation. The time will vary with different individuals and under varying circumstances. The true test is not the duration of time, but rather the extent of reflection. A cold, calculated judgment and decision may be arrived at in a very short period of time required for a simple second thought, but a mere unconsidered and rash impulse, even though it includes an *intent to kill,* is not such deliberation and premeditation as will fix an unlawful killing to be murder in the first degree.

To constitute a deliberate and premeditated killing, the *slayer* must weigh and consider the question of killing and the reasons for and against such choice and then decide to commit the unlawful act causing death.

If the killing occurs during the perpetration or an attempt to perpetrate a robbery, deliberation and premeditation by the *slayer* is not required for murder in the first degree, but it is required that the *killing be intentional.* Intent must be present not only for the robbery, but also for the killing.

(Emphasis added.)

INSTRUCTION NO. 11:

The word "purposely" as used in these instructions means "intentionally," that is, with a *specific intent to kill.*

In the crime of murder in the first degree, with which the defendant is charged in the Indictment, there must exist a union or joint operation of act or conduct and a certain specific intent.

In the crime of murder in the first degree, there must exist in the mind of the perpetrator the *specific intent to kill;* that is, the perpetrator must have as the fixed design of his act and the end aimed at or object sought, the death of another person. Unless the State proves beyond a reasonable doubt the existence of such intent, the crime of murder in the first degree is not committed.

As evidence of the *specific intent to kill,* it is reasonable to infer that a person ordinarily intends the natural and probable consequences of acts knowingly done or knowingly omitted.

(Emphasis added.)

INSTRUCTION NO. 13:

Perpetrating or attempting to perpetrate means that the killing must have occurred as

consistent with an ultimate jury finding of Carman's guilt of first-degree murder based upon preliminary jury findings that Carman purposely aided Boyd in the perpetration of the robbery of Johnson and that Boyd purposely killed Johnson in the perpetration of the same robbery. Carman argues that such a finding would not conform to Alaska law because he could not be guilty of felony murder unless he either: (1) pulled the trigger; or (2) somehow communicated to Boyd an intent to kill Johnson when he handed Boyd the .45 caliber handgun. The state apparently concedes the accuracy of this argument. *Gray v. State,* 463 P.2d 897 (Alaska 1970).

■ The court in *Gray* held that Alaska's former felony murder law was derived from Ohio Law. *Id.* at 902. The court therefore followed Ohio cases in reaching

its conclusion that a person could not be guilty of felony murder unless he intended to kill. Carman did not preserve this argument by objections in the trial court. Generally, on appeal a defendant cannot attack the propriety of a jury instruction, whether given or refused, unless he specifically objected to the instruction in the lower court. Alaska R.Crim.P. 30(a). An exception to this general rule exists where the instruction constitutes plain error. Alaska R.Crim.P. 47(b). The court is not obligated to give an erroneous instruction proffered by a party; however, if the erroneous instruction alerts the court to an issue not adequately covered, there may be a duty to give further instructions. *Pepsi Cola Bottling Co. of Anchorage v. Superior Burner Service Co.,* 427 P.2d 833, 837 (Alaska 1967).

part of acts leading up to, or occurring during, or immediately subsequent to the robbery and that the killing was directly associated with the robbery.

INSTRUCTION NO. 19:

Under the laws of the State of Alaska, all persons who knowingly participate in the commission of a crime, whether they directly commit the criminal act constituting the crime or, though not present, aid and abet in its commission, may be found guilty of such crime. In other words, a defendant need not personally and directly commit every element of an offense to be guilty of it, so long as the State proves commission of the whole offense by a person or combination of persons and the aiding and abetting of the offense by the defendant.

Thus, *it is not incumbent upon the State to prove beyond a reasonable doubt that the defendant personally committed every element of the crime alleged to sustain a conviction,* so long as you believe beyond a reasonable doubt that the *offense was committed and that the defendant aided and abetted its commission.*

You of course *may not find the defendant guilty unless* you find beyond a reasonable doubt that every element of the offense as defined in these instructions was committed by *some* person or persons *and* that the *defendant participated in its commission.*

(Emphasis added.)

INSTRUCTION NO. 20:

In order to *aid and abet* another to commit a crime it is necessary that the accused *wilfully associate himself* in some way with the crime or crimes, and *wilfully participate* in it as he would in something *he wishes to bring about;* that is to say, that he *wilfully seeks*

by some act or omission of his to make the crime or crimes succeed.

An act or omission is "wilfully" done if done voluntarily and *intentionally* and with the *specific intent* to do something the *law forbids,* or with the specific intent to fail to do something that law requires to be done; that is to say, with bad purpose either to disobey or to disregard the law.

*Mere presence at the scene of a crime is not enough in itself to make a person guilty of aiding or abetting in murder or armed robbery.*

In determining the guilt or innocence of the defendant, you are to consider each count of the indictment separately as to whether or not he wilfully participated in a particular crime with which he is charged.

(Emphasis added.)

INSTRUCTION NO. 24:

A person is an accessory after the fact if *after the commission of any felony,* he *conceals* or *aids* the offender knowing that the person he is aiding or concealing has committed a felony and intending that the offender may avoid or escape from arrest, trial, conviction, or punishment. A person who is an accessory after the fact to the commission of a felony may be prosecuted as an accessory after the fact, tried and punished, though the principal felon is neither prosecuted nor tried.

You are instructed that *you may not convict* defendant Michael Lee Carman of first degree murder if you believe he is only an *accessory after the fact* to *first degree murder* nor may you convict him of *armed robbery* if you believe he is only an *accessory after the fact to armed robbery.*

(Emphasis added.)

*See* Alaska R.Crim.P. 30(b). Here, however, Carman's sole attack on the accomplice instructions was his request for certain modifications. The state did not object and the requested modifications were made to Carman's apparent satisfaction.

■ Carman's only other relevant objection was in conjunction with his motion for a partial judgment of acquittal on the issue of aiding and abetting in a felony murder. He asserted that there was no evidence from which a jury could infer that he aided and abetted in a homicide. Assuming that the jury found that Carman aided and abetted Boyd in a planned armed robbery of Johnson, they could have found him guilty of felony murder. Substantial evidence in the record supports Carman's conviction on this basis and he was therefore not entitled to a judgment of acquittal. *See State v. Scott,* 61 Ohio St.2d 155, 15 O.O.3d 182, 400 N.E.2d 375, 382 (1980) (person who enters into an agreement with another to commit an armed robbery of a third person is guilty as an accomplice to felony murder if the third person is intentionally killed by an accomplice and the defendant should reasonably have foreseen the risk of a killing); *State v. Lockett,* 49 Ohio St.2d 48, 3 O.O.3d 27, 358 N.E.2d 1062, 1070–72 (1976) (when all the participants in robbery knew that an inherently dangerous instrumentality was to be used to accomplish robbery, defendant-participant deemed to intend consequences naturally and probably arising from the furtherance of the conspiracy to commit the robbery), *rev'd in part on other grounds,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). *Cf. Gray v. State,* 463 P.2d at 904–05.[2]

■ Assuming without deciding that instructions expressly approved by the defendant can be plain error and that the jury instructions in question would have permitted the jury to convict Carman as an aider and abetter of felony murder without a finding that Carman could reasonably have foreseen Johnson's death at the time he aided and abetted Boyd in the robbery, we believe any such instructional error was harmless beyond reasonable doubt. The jury was not expressly instructed that Carman could be held responsible for an unforseeable homicide by an accomplice as was the jury in *State v. Scott,* 400 N.E.2d 375, 382–83 (Ohio 1980). The jury was told both that Carman must have intended Johnson's death to be guilty of felony murder (instruction 9), and that Carman could not be convicted of either armed robbery or murder merely because he was present (instruction 20) or an accessory after the fact (instruction 24). At Carman's request, the following language was added to instruction 20 defining the criminal liability of an accessory: "In determining the guilt or innocence of the defendant, you are to consider each count of the indictment separately as to whether or not he wilfully participated in a particular crime with which he is

---

**2.** In *Gray* the court seems to impute the shooter's intent to his accomplice where the two have entered into an agreement to commit an armed robbery, 463 P.2d at 904–05, but does not reconcile imputed liability with the rule it had just adopted requiring intent to kill as an element of felony murder. The Ohio cases upon which the *Gray* court relied impute liability under these circumstances on the theory that anyone entering into a conspiracy to commit an armed robbery should foresee the risk of a killing. *See State v. Lockett,* 358 N.E.2d at 1070–72. The Ohio rule holding accomplices guilty of felony murder, if their accomplice had the intent to kill, antedates the adoption of the Ohio statute as the Alaska felony murder statute, *see Woolweaver v. State,* 50 Ohio St. 277, 34 N.E. 352, 353 (Ohio 1893) (recognizing rule), and therefore would be held to have been adopted with the statute. *Gray v. State,* 463 P.2d at 902; *City of Fairbanks v. Schaible,* 375 P.2d 201, 207 (Alaska 1962). The *Gray* court noted that the District of Columbia at one time followed the Ohio statute as its felony murder rule. The District of Columbia courts also imputed a killer's intent to his accomplice to armed robbery. *See Marcus v. United States,* 86 F.2d 854, 862 (D.C.Cir.1936). The Ohio law on accomplice liability for felony murder is discussed further in Case Comment, *Liability for Aggravated Murder in Ohio,* 39 Ohio St.L.J. 214 (1978), and Comment, *The Felony Murder Rule in Ohio: State v. Lockett,* 17 Ohio St.L.J. 130, 137–38 (1956). We, therefore, reject Carman's argument and hold that an accomplice who participates in planning an armed robbery may be held liable for the felony murder of the robbery victim even though he did not personally intend the victim's death. Former AS 11.15.010.

charged." Also at Carman's request, the court substituted the phrase "crime or crimes" for the phrase "criminal venture" in the first paragraph of instruction 20 so that the modified instruction as given to the jury read, in part:

> In order to aid and abet another to commit a crime it is necessary that the accused wilfully associated himself in some way with the crime or crimes and wilfully participated in it as he would in something he wishes to bring about; that is to say, that he wilfully seeks by some act or omission of his to make the crime or crimes succeed.

Finally, the defendant's evidence and that of the state only diverge from the time Carman, Boyd, and Johnson began the drive to Johnson's residence until the time of Johnson's death. Boyd and Carman consistently testified that Boyd shot Johnson and that Carman did not participate in the robbery or murder or the planning of either. The only conflicting evidence offered by the state is testimony by a number of Carman's acquaintances that Carman admitted killing Johnson. Thus, the jury's decision to disbelieve Carman's and Boyd's description of the circumstances surrounding Johnson's death must have been based on their acceptance of the testimony regarding Carman's admissions that he participated in the killing of Johnson.

## CARMAN'S PRIOR TESTIMONY

The trial court permitted the jury to hear Carman's testimony from his prior trial as part of the state's case-in-chief. At trial, Carman argued that his former testimony did not constitute an admission and therefore was not relevant, but if relevant, its relevance was outweighed by its prejudicial impact. Alaska R.Evid. 403. Carman relied on two assumptions to establish "prejudice." First, he argued that the use of the testimony would inform the jury that there had been a prior trial, and second, that the context in which the testimony was originally given could not be reconstructed and therefore replay of the testimony would confuse or mislead the jury.

■ On appeal, Carman concedes that his prior testimony qualified as an admission, Alaska R.Evid. 801(d)(2)(A), and does not press his contention that it was confusing. We do not believe that the trial court erred in concluding that the probative value of the prior testimony outweighed any prejudice in alerting the jury to the prior trial. The trial court gave a cautionary instruction regarding the prior trial. Carman's prior testimony was relevant to place him at the scene of the killing, armed with one of the deadly weapons used to kill Johnson. It was therefore highly probative.

■ Carman raises an additional complaint for the first time on appeal. He contends that admission of his prior testimony violated the rule of *Harrison v. United States,* 392 U.S. 219, 222, 88 S.Ct. 2008, 2010, 20 L.Ed.2d 1047, 1051 (1968). In that case the United States Supreme Court held that a defendant's testimony at a prior trial cannot be used in a subsequent trial if the prior testimony was "impelled" by the prosecutor's use of an illegally obtained confession. Since this argument was not presented to the court below we cannot consider it unless use of the testimony constituted plain error. Alaska R.Crim.P. 47(b); Alaska R.Evid. 103(a)(1), (d). A plain error is one that is obvious and substantially prejudicial. *Crutchfield v. State,* 627 P.2d 196, 198 (Alaska 1980); *Marrone v. State,* 653 P.2d 672 (Alaska App., 1982). To establish plain error a litigant must do more than show that the rule of law he relies upon in the appellate court should have been obvious to the trial court. He must, in addition, establish that the application of that rule of law to the facts of his case was so obvious that it should have been noticed by the trial court *sua sponte.*

■ The reversal of Carman's earlier conviction was not based upon the introduction of an illegally obtained confession or for that matter upon any illegally obtained evidence. *See Carman v. State,* 604 P.2d 1076 (Alaska 1979). It is not necessary to determine whether prior testimony "impelled" by other kinds of prosecution errors

that result in reversal and new trials, warrants relief under the *Harrison* test because we do not believe that Carman has established that his former testimony was "obviously" impelled by prosecution errors. Consequently, failure to exclude the testimony at Carman's second trial was not a plain error.

## IMPROPER IMPEACHMENT

Carman initially argued that a prior robbery conviction was improperly used for impeachment purposes. The facts of that robbery are disclosed in *Carman v. State,* 602 P.2d 1255 (Alaska 1979). Carman now concedes that the evidence was not used for that purpose and we need not discuss the issue further.

## JUDGE HODGES' FAILURE TO RECUSE HIMSELF AND JUDGE TAYLOR'S FAILURE TO DISQUALIFY JUDGE HODGES

■ After Carman's first trial and during sentencing, Judge Hodges indicated that he believed neither Carman's nor Boyd's testimony regarding the circumstances surrounding Johnson's death. Carman argues that the judge's disbelief of his testimony rendered the judge incapable of delivering "fair and impartial decisions" on discretionary matters arising during trial. Disbelief of a defendant's testimony does not automatically require a judge to recuse himself. *Coffey v. State,* 585 P.2d 514, 525 (Alaska 1978). *See also United States v. Sutherland,* 463 F.2d 641, 650 (5th Cir.), *cert. denied* 409 U.S. 1078, 93 S.Ct. 698, 34 L.Ed.2d 668 (1972). We have reviewed the record and conclude that neither Judge Hodges nor Judge Taylor abused their discretion in deciding this issue. *Cf. Amidon v. State,* 604 P.2d 575, 577–78 (Alaska 1979) (judge's decision whether or not to recuse entitled to great weight).

## ALLEGED AMENDMENT OF THE INDICTMENT

Carman was charged in a single count of the indictment with both the premeditated murder of Johnson and the purposeful murder of Johnson in the perpetration of a robbery. In both, it is alleged that Carman killed Johnson by intentionally shooting him with a handgun. The trial court separately instructed the jury on the charges of premeditated murder and felony murder and permitted the jury to return separate verdicts. The jury acquitted Carman of premeditated murder but convicted him of felony murder.

Carman contends that by joining premeditated and felony murder in a single count, the prosecution in effect merged the offenses and undertook to prove both premeditated and felony murder conjunctively and not disjunctively. Consequently, Carman claims that by separately instructing the jury on each offense and by permitting the jury to return separate verdicts the court constructively amended the indictment by modifying the elements that the state had undertaken to prove.

■ An amendment which changes the elements of the crime charged invalidates an indictment. *McGahan v. State,* 606 P.2d 396, 397 (Alaska 1980); *Gilbert v. State,* 598 P.2d 87, 90–91 (Alaska 1979); *Beckley v. State,* 443 P.2d 51, 56 (Alaska 1968). In *Watson v. Jago,* 558 F.2d 330 (6th Cir.1977), the court discussed the Ohio statute from which our former first-degree murder statute was adopted. In the course of determining whether premeditated murder and felony murder were separate crimes, the court distinguished between an impermissible amendment to an indictment and a variance, stating:

An *amendment* of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by prosecutor or court after the grand jury has last passed upon them. A *variance* occurs when the charging terms of the indictment are left unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment.

*Id.* at 334 (quoting *Gaither v. United States,* 413 F.2d 1061, 1071 (D.C.Cir.1969)) (emphasis in original). The *Watson* court recog-

nized that a constructive amendment occurs when the charging terms of an indictment have not been literally changed but the elements of the crime have been effectively altered or modified at trial. *Id.*

 Carman's indictment was clearly duplicitous. Premeditated murder and felony murder, while prohibited by the same statute, cover separate crimes. *Id.* at 334–35. However, the rule against duplicity is a rule of pleading not substance. *Trounce v. State,* 498 P.2d 106, 111 (Alaska 1972). Thus upon motion, two crimes improperly joined in a single count can be segregated into separate counts in the same indictment. *Id.; see* C. Wright, *Federal Practice and Procedure Criminal* § 142, 145 (2d ed.1982).

The vice of duplicity is that there is no way in which the jury can convict of one offense and acquit on another offense contained in the same count. A general verdict of guilty will not reveal whether the jury found the defendant guilty of one crime and not guilty of the others, or guilty of all. It is conceivable that this could prejudice defendant in sentencing, in obtaining appellate review, and in protecting himself against double jeopardy. Wright, § 142 at 475 (footnotes omitted).

 The normal remedy for a duplicitous indictment is the requirement that the prosecutor elect the offense upon which he will proceed. *Kimble v. State,* 539 P.2d 73, 75 (Alaska 1975). Here, the trial court, in its instructions carefully distinguished between premeditated murder and felony murder, and the jury returned separate verdicts, thus we find no prejudice. *See Drahosh v. State,* 442 P.2d 44, 48–49 (Alaska 1968).

Carman relies on *Whalen v. United States,* 379 A.2d 1152 (D.C.1977), *rev'd on other grounds,* 445 U.S. 684, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980), which is easily distinguished. *Whalen* was indicted for burglary, and the ulterior felonies were specified conjunctively as theft and assault. Upon motion of the prosecution, the theft charge was deleted at trial for insufficient evidence. *Whalen* was convicted of burglary

based on assault as the ulterior crime. On appeal the court reversed his judgment of conviction, holding that deletion of "theft" as an ulterior crime impermissibly amended the indictment. *Id.* at 1157. The underlying felony upon which a burglary is based is an element of the crime which must be specified in the indictment, *Adkins v. State,* 389 P.2d 915, 916 (Alaska 1964), thus deletion of theft did modify an element of the crime. In Carman's case, no element of premeditated or felony murder was modified or altered. We express no opinion as to whether *Whalen* was correctly decided on its own facts.

 There was no formal amendment of the indictment and no variance between the facts alleged in the indictment and those proved at trial. Carman was indicted as a principal; he may be arguing that so characterizing him in the indictment precludes the state from convicting him on a theory of aiding and abetting Boyd. If so, Carman is in error. Former AS 12.15.010 expressly permitted the indictment of an aider and abetter as a principal. *See Trounce v. State,* 498 P.2d at 109.

## PROSECUTION'S FAILURE TO PRESERVE EVIDENCE

Before his second trial, Carman filed several motions requesting the state to produce the victim's car and body, lab tests of tissues samples removed from the body, x-ray photographs taken at the autopsy, and clothing the victim had worn at the time of his death. Carman did not move to produce these items prior to his first trial. All of these items were destroyed after the first trial; thus, Judge Hodges could not order the production of any of this evidence. Carman then filed a motion to dismiss the indictment based on the state's failure to preserve the requested evidence. The court denied the motion to dismiss without prejudice and allowed Carman an opportunity to show at trial that the missing evidence was material, at which time relief would be given. Carman failed to renew his motion at trial but now claims that the trial court's denial of the motion to dismiss was reversi-

ble error. Alaska Rule of Criminal Procedure 16(b) provides in relevant part:

(1) *Information Within Possession or Control of Prosecuting Attorney.* Except as is otherwise provided as to matters not subject to disclosure and protective orders, the prosecuting attorney shall disclose the following information within his possession or control to defense counsel and make available for inspection and copying:

. . . .

(v) Any books, papers, documents, photographs or tangible objects, which the prosecuting attorney intends to use in the hearing or trial which were obtained from or belong to the accused

. . . .

. . . .

(7) *Other Information.* Upon a reasonable request showing materiality to the preparation of the defense, the court in its discretion may require disclosure to defense counsel of relevant material and information not covered by subsections (b)(1), (b)(2), (b)(3), and (b)(6).

Items listed in Rule 16(b)(1) must be furnished automatically, while those covered by Rule 16(b)(7) need be produced only on request and only where their materiality is shown.

▆▆▆ Carman erroneously relies on Rule 16(b)(1)(v) since the items he seeks were not "obtained from or belonging to the accused." Alaska Rule of Criminal Procedure 16(b)(7), which is applicable, is similar to Federal Rule of Criminal Procedure 16(b) and requires both a request for disclosure and a showing of materiality. Carman did not request the material prior to the first trial and therefore waived any rights he might have had under the discovery rules. *Cf.* Alaska R.Crim.P. 12(b), (e). The supreme court's reversal of the judgment of conviction after Carman's first trial did not revive discovery rights that had already lapsed; consequently, there was no duty to preserve the evidence in question unless it was so clearly exculpatory that the prosecutor was obligated to preserve it absent a request. *See* Alaska R.Crim.P. 16(b)(3);

*see also Wyrick v. State,* 590 P.2d 46 (Alaska 1979); *White v. State,* 577 P.2d 1056 (Alaska 1978). Carman has not established the materiality to his defense of the requested items. His failure to seek discovery of the items prior to his first trial or show their materiality at the second trial precludes him from prevailing in this appeal. *See United States v. Agurs,* 427 U.S. 97, 106, 96 S.Ct. 2392, 2398–99, 49 L.Ed.2d 342, 351 (1976).

*Putnam v. State,* 629 P.2d 35, 42–46 (Alaska 1980), deals with Alaska Rule of Criminal Procedure 16(b)(i) and (ii) which requires the prosecution to furnish, without request, names and addresses of potential witnesses and their recorded statements. This is distinguishable from the issue Carman raises. The waiver rule we adopt applies only to items governed by Rule 16(b)(7) which are: (1) known to defendant before trial or in the exercise of reasonable diligence should have been known to him; and, (2) not so clearly exculpatory that preservation is required absent request pursuant to Rule 16(b)(3). Carman has not convinced us that the unavailability of the items which he belatedly requested reduced his trial to a mockery or farce warranting relief independently of the discovery rules under the state or federal constitutions. *See Putnam v. State,* 629 P.2d at 43 n. 13 (construing *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963)).

### THE SENTENCE

Carman was found guilty of premeditated first-degree murder and armed robbery after his first trial and sentenced to life imprisonment. He applied for sentence reduction pursuant to Alaska Rule of Criminal Procedure 35(a), and the state did not oppose the request. The court granted the motion concluding that Carman had agreed to testify against Boyd, a codefendant, and reduced Carman's sentence to thirty years consecutive to a ten-year sentence previously imposed for an unrelated armed robbery. *See Carman v. State,* 602 P.2d 1255 (Alaska 1979) (affirming the separate robbery conviction and sentence).

■ Carman appealed his murder conviction and won a reversal and retrial. *Carman v. State,* 604 P.2d 1076 (Alaska 1979). Carman did not challenge his sentence in that earlier appeal, and the identical sentence was reimposed after the second trial and a subsequent hearing during which evidence was introduced and considered. The state contends that by failing to initially appeal his sentence, Carman waived the right to do so after his second trial. We express no opinion about this issue since our evaluation of the record leads us to conclude that the sentence imposed was not clearly mistaken. The trial judge did not simply reincorporate his sentencing remarks in conjunction with the sentence previously imposed, rather, he carefully considered each of the criteria specified in *State v. Chaney,* 477 P.2d 441, 444 (Alaska 1970), at a separate sentencing hearing following Carman's second conviction. The minimum sentence for first-degree murder under our former statute was twenty years, while a maximum sentence was life imprisonment. Carman's modified sentence was only ten years in excess of the minimum sentence allowed. Considering the sentence to which this sentence was made consecutive, Carman's aggregate sentence is less than one-half the current maximum sentence for unmitigated intentional homicide. AS 11.-41.100; AS 12.55.125(a). In this regard it should be noted that all intentional killings unless legally excused or mitigated to manslaughter are first-degree murder under the new code, and felony murder, which is second-degree murder, does not currently require an intent to kill. Given the nature of the crime, we cannot say that the total sentence is clearly mistaken. *See Gest v. State,* 619 P.2d 724, 726 (Alaska 1980); *Brown v. State,* 601 P.2d 221, 235 (Alaska 1979).

The judgment and sentence of the superior court are AFFIRMED.