# State of Vermont v. Alvah C. Couture

[502 A.2d 846]

No. 83-307

Present: **Allen, C.J., Hill, Peck, Gibson and Hayes, JJ.**

Opinion Filed September 6, 1985

*John A. Rocray*, Windham County State's Attorney, and *Susan K. Sively*, Deputy State's Attorney (On the Brief), Brattleboro, for Plaintiff-Appellee.

*William A. Nelson* and *Henry B. Hinton*, Appellate Defenders, Montpelier, for Defendant-Appellant.

**Gibson, J.** Defendant appeals his convictions for kidnapping, 13 V.S.A. § 2401, and simple assault, 13 V.S.A. § 1023(a). He raises three claims on appeal: (1) although defendant was charged, in a single count, with forcibly confining five people, the court erroneously instructed the jury that defendant could be convicted for confining "any one of the five"; (2) the court erred in sustaining the Fifth Amendment claim asserted by a witness who had already been adjudicated guilty; and (3) the court erred by excluding evidence of a complainant-witness's prior conviction. We affirm the simple assault conviction but reverse the kidnapping conviction on the first-stated ground.

## I.

The State charged defendant, in a single count, under 13 V.S.A. § 2401, as being "a person who, without legal authority forcibly confined another person within this state against his will, to wit, Mark Elli[so]n, Deborah Benware, Pam Alexander, Wayne Coulombe, and Alphonzo Welch . . . ." At the close of the evi-

dence, the court recited that count verbatim to the jury. However, the court then stated, and repeated:

> it is sufficient for a finding of guilt if you find beyond a reasonable doubt that the defendant intentionally forcibly confined at a place in Vermont without legal authority and against his will, *any one of the five* alleged victims. . . .

(Emphasis supplied.)

At a chambers conference held before delivery of the jury instructions, defendant objected to the proposed jury instruction, because the single kidnapping count alleged that he had confined not one, but five, people. Theorizing that the kidnapping of each alleged victim was a lesser-included defense under V.R.Cr.P. 31(c), the court suggested that the proposed charge was beneficial to defendant. Not only did defendant not risk serving five consecutive sentences if convicted, the court explained, but also, if defendant were acquitted, "the State can't go ahead and retry him on any one of the particular persons rather than the group . . . . If the jury found him not guilty, they will necessarily have found there is insufficient evidence to find him guilty against any one of the five victims. So there's a lot of benefit to be gained here." Surmising that the jury would be "thinking in terms of blocks," the court asked why it should instruct differently. Defense counsel then expressly accepted the proposed instruction: "The defense doesn't object to the charge."

Despite this concession by defense counsel, we conclude that the conviction must be reversed because, in the circumstances, the court's instructions constituted plain error. *State* v. *D'Amico*, 136 Vt. 153, 157, 385 A.2d 1082, 1085 (1978).

The instructions on the single kidnapping count gave the jury multiple ways to convict defendant but did not require the jury to identify which person or persons all twelve jurors agreed had been kidnapped. Nor did the instructions explain that all twelve were required to reach unanimous agreement as to which person or persons the jury found had been kidnapped.

■   When two or more offenses are properly joined in an information, each offense must be stated in a separate count. V.R.Cr.P. 8(a). Reciting more than one criminal charge in a single count constitutes "duplicity"; in that situation, "[a] general verdict of guilty will not reveal whether the jury found the defendant guilty of one crime and not guilty of the others, or guilty of all." 1

C. Wright, Federal Practice & Procedure § 142, at 475 (2d ed. 1982); see *State* v. *Bonilla*, 144 Vt. 411, 414, 477 A.2d 983, 985 (1984) ("[w]here multiple acts are involved, each of which could have constituted a separate offense, . . . [t]he State should be required to select the particular act upon which it relies . . . ."); V.R.Cr.P. 8, Reporter's Notes (duplicitous count can cause confusion in verdict, at sentencing, and on appeal).

Duplicity is not an automatically fatal flaw in an information, because timely amendment can segregate improperly joined charges. See *Trounce* v. *State*, 498 P.2d 106, 111 (Alaska 1972); *Carman* v. *State*, 658 P.2d 131, 139 (Alaska Ct. App. 1983); V.R.Cr.P. 7(d). Nor is reversal warranted where a defendant does not object, before verdict, to the form of a charge of which he was fairly informed and not prejudiced. *State* v. *Lamelle*, 133 Vt. 378, 379, 340 A.2d 49, 50 (1975) (distinguishing substantial defects from formal ones); *State* v. *Provencher*, 128 Vt. 586, 589, 270 A.2d 147, 149 (1970) (same).

In this case, the allegations of confinement of multiple victims could have been stricken from the information on defendant's motion, as surplusage, V.R.Cr.P. 7(c), but this was not done. Requiring the State to prove that defendant forcibly confined all five people, with a jury instruction to this effect, would have caused defendant no prejudice. However, the court did not treat the information as a statement of a single count. Instead, the court permitted the jury to find defendant guilty of several counts of forcible confinement under a variety of inadequately differentiated or explained factual possibilities.

A similar error occurred in the case of *Wicks* v. *Lockhart*, 569 F. Supp. 549, 565-67 (E.D. Ark. 1983). In *Wicks*, the indictment charged two counts of rape, but, during trial in state court, the court's instructions simply asked the jury to decide whether defendant "was guilty of rape." *Id.* at 566. The federal district court granted habeas corpus relief because the instructions had relieved the State of its burden to prove each and every element of each offense charged beyond a reasonable doubt. *Id.* at 567-68.

The possibility existed in *Wicks* that not all jurors believed the defendant guilty of the same count or counts. *Id.* at 566. The same is true in the present case. Although the court told the jury that multiple ways existed to find defendant guilty of kidnapping, the court did not divide the information into multiple counts; it did not require special verdicts by the jury, identifying each per-

son unanimously concluded to have been forcibly confined; nor did it explain that unanimity regarding the confinement of each person was required.

In Vermont, a criminal defendant has a constitutional right to be tried by a common law jury of twelve, *State* v. *Hirsch*, 91 Vt. 330, 335-36, 100 A. 877, 879 (1917), "without the *unanimous* consent of which jury, he cannot be found guilty . . . ." Vt. Const. ch. I, art. 10 (emphasis supplied). The jury instructions in this case violated the Vermont Constitution by permitting the jury to convict defendant for kidnapping, without assuring its unanimity regarding the essential element of defendant's confinement of a particular person. Even though defense counsel expressly waived objection, it was plain error, V.R.Cr.P. 52(b), for the court to overlook the state constitutional requirement of a unanimous verdict on an essential element simply because the parties were "thinking in terms of blocks." The error was obvious and struck "at the very heart of defendant's constitutional rights." *State* v. *Turner*, 145 Vt. 399, 403, 491 A.2d 338, 340-41 (1985). Therefore, despite defense counsel's acceptance of the instruction, we reverse the kidnapping conviction. *D'Amico, supra,* 136 Vt. at 157, 385 A.2d at 1085; cf. *Wicks, supra,* 569 F. Supp. at 567 (rarity of situation and egregiousness of harm justified relief).

## II.

Defendant also seeks reversal of his simple assault conviction, arguing that the court erred by allowing a convicted witness to invoke the Fifth Amendment's privilege against self-incrimination.

The affidavits supporting the charges described acts that defendant allegedly committed in concert with a certain Joseph Parda. By pretrial motion, defendant sought an order holding prospective defense witness Parda in contempt if he refused to testify.[1]

Parda had been separately charged and, upon a plea of nolo contendere, was adjudicated guilty. He did not appeal. After beginning to serve his sentence, Parda initiated efforts to withdraw his plea; however, at the time of the hearing on defendant's pre-

---

[1] Although we conclude that the witness had previously waived his privilege against self-incrimination, we offer no opinion as to the merits of such a motion. See 12 V.S.A. § 1664 (procedure for dealing with immunity claims of witnesses).

trial motion, Parda's application had been dismissed as filed in the wrong forum. When Parda said that he planned to file a new application in the proper forum, the court permitted him to refuse to answer questions as he chose. Although the court stated that it would consider Parda's assertions of privilege on a question-by-question basis, it also gave him free rein: "If someone asks you again your name, it's up to you."

We conclude that the court erred when it permitted Parda to invoke a privilege without showing that his proposed collateral attack had merit; the court also erred in granting a privilege of unlimited scope.

■ The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any Criminal Case to be a witness against himself . . . ." No plea of nolo contendere may be accepted unless the defendant is informed of, understands, and waives this privilege. V.R.Cr.P. 11(c)(4); see *Boykin* v. *Alabama*, 395 U.S. 238, 243-44 (1969) (plea involves voluntary and understanding waiver of privilege against self-incrimination); *State* v. *Hamlin*, 143 Vt. 477, 480-81, 468 A.2d 557, 559 (1983) (same).

"It is established law that because a witness has been found guilty of the actions in question he is no longer entitled to claim the privilege of the fifth amendment with respect to those matters and he may be compelled to testify about them." *United States* v. *Heldt*, 668 F.2d 1238, 1253 (D.C. Cir. 1981), *cert. denied*, 456 U.S. 926 (1982); see also *Minnesota* v. *Murphy*, 465 U.S. 420, 426 (1984) (privilege applies " 'where the answers might incriminate [one] in future criminal proceedings,' " or in prosecution for another crime) (quoting *Lefkowitz* v. *Turley*, 414 U.S. 70, 77 (1973)). One compelled to provide self-incriminating evidence must be given immunity adequate " 'to supplant the privilege.' " *Baxter* v. *Palmigiano*, 425 U.S. 308, 316 (1976) (quoting *Lefkowitz, supra*, 414 U.S. at 85).

■ Having pleaded nolo contendere and been adjudicated guilty, after waiving his privilege against self-incrimination, Parda was no longer entitled to claim the privilege with respect to the crime in question unless the waiver had not been voluntarily made. See *Heldt, supra*, 668 F.2d at 1253. Parda's immunity from contempt for refusal to testify regarding the matters in question was coextensive only with the scope of his privilege against self-incrimination. *Kastigar* v. *United States*, 406 U.S. 441, 453, *re-*

*hearing denied*, 408 U.S. 931 (1972).[2] That is to say, under the circumstances Parda was entitled to no immunity unless the validity of his plea was subject to collateral attack of some apparent merit.

The court took judicial notice of the fact that "many convictions of various defendants have been set aside in recent year[s]" and noted that Parda "might well be allowed to withdraw his plea and be given an opportunity to go to a full trial, at which trial, the witness could have any statement that he makes for which he was not given immunity, used against him."

In allowing Parda to refuse to testify absent a showing that the collateral challenge to his adjudication of guilt had merit, the court abused its discretion.[3] Neither Parda nor anyone else presented any evidence or argument to support a claim that Parda was legally entitled to the post-conviction relief he was said to be planning to seek.[4]

Citing *Commonwealth v. Strickler*, 481 Pa. 579, 393 A.2d 313 (1978), and *Commonwealth v. Rodgers*, 472 Pa. 435, 372 A.2d 771 (1977), the State argues that, even though adjudicated guilty and with no direct appeal pending, a witness may assert a Fifth Amendment privilege if he or she plans to seek collateral post-conviction relief. However, in explaining *Rodgers*, the Pennsylvania court in *Strickler* observed that, although the prospect of collateral relief means that there can be no per se bar against invocation of the privilege, the court must determine in the particular case whether the witness has a reasonable basis to fear self-incrimination. *Strickler, supra*, 481 Pa. at 587-88, 393 A.2d at 317.

---

[2] The record contains no evidence that the danger of "injurious disclosure," *Hoffman v. United States*, 341 U.S. 479, 487 (1951), was related to "another crime." *Minnesota v. Murphy, supra*, 465 U.S. at 426. Rather, the only topic discussed was Parda's plan to seek to withdraw his plea to his related charges. Immunity procedures are addressed by 12 V.S.A. § 1664.

[3] We do not imply that this resulted from any default or waiver by Parda. Rather, the court unilaterally extended him immunity without requiring a proper showing.

[4] We note also that inadmissibility at subsequent trial, rather than a privilege to refuse to answer questions, may be all that the United States Supreme Court now interprets the Constitution to require:

> notwithstanding that a defendant is imprisoned or on probation at the time he makes incriminating statements, if those statements are compelled they are *inadmissible in a subsequent trial for a crime other than that for which he has been convicted.*

*Minnesota v. Murphy, supra*, 465 U. S. at 426 (emphasis supplied).

In the present case, the court granted Parda a blanket privilege to refuse to testify, without the slightest indication that Parda's grounds for relief had any merit.

Because the constitution only guarantees "use and derivative use" immunity regarding *other* crimes about which one is compelled to testify, we reject the argument that a witness contemplating collateral attack on the *same* conviction may invoke a blanket privilege without an ad hoc determination by the court. Neither 12 V.S.A. § 1664, the Pennsylvania cases cited by the State, nor *Baxter* v. *Palmigiano* or *Minnesota* v. *Murphy* support immunity exceeding what is necessary "to supplant the privilege." On retrial, unless he has successfully challenged his plea, Parda may be compelled to testify upon penalty of contempt.

A related aspect of this issue must also be addressed. Although a defendant may refuse to take the stand at all, a witness may only assert the privilege regarding specific incriminating answers. *United States* v. *Harmon*, 339 F.2d 354, 359 (6th Cir. 1964), *cert. denied*, 380 U.S. 944, *rehearing denied*, 380 U.S. 989 (1965); *United States* v. *Housing Federation of America, Inc.*, 176 F.2d 665, 666 (3d Cir. 1949). A trial court should exercise discretion in limiting assertion of the privilege to questions raising a real danger of injurious disclosure. *Zicarelli* v. *New Jersey State Commission of Investigation*, 406 U.S. 472, 478 (1972); *Hoffman* v. *United States*, 341 U.S. 479, 486-87 (1951).

In this case, the court erred by permitting Parda and another witness to refuse to answer numerous innocuous questions that posed no discernible risk of incrimination. This constituted a discretionary failure by the court to limit exercise of the privilege to questions raising a real danger of injurious disclosure.

However, we do not hereby reverse defendant's simple assault conviction. After the court allowed Parda to refuse to answer, and while Parda asserted a privilege regarding virtually every question posed, defendant did not seek an order of contempt, nor did he make an offer of proof regarding what he expected Parda to say. *State* v. *Beckenbach*, 136 Vt. 557, 561, 397 A.2d 79, 81 (1978); V.R.E. 103; V.R.Cr.P. 26, Reporter's Notes. Instead, the trial court granted defendant permission to submit a deposition of the witness, if he wished, which defense counsel stated would be an acceptable substitute; however, defendant then failed to place any portion of that deposition into evidence. Defendant having thus waived his opportunity to submit evidence from the

witness, his simple assault conviction will not be reversed because his acts were insufficient to give the court an "opportunity to understandingly pass on the question." *Beckenbach, supra,* 136 Vt. at 561, 397 A.2d at 81. The claim does not rise to the level of plain error.

## III.

Finally, defendant claims that the court erroneously excluded evidence that a witness, one of the alleged victims, had been convicted of sexual assault of a minor. We find no error.

13 V.S.A. § 2401 forbids the kidnapping of *any* person, including one previously convicted of sexual assault. The fact that the alleged victim was once convicted of an immoral act bore no relevance to any substantive defense theory against the charges.

V.R.E. 609(a) provides:

> *General rule.* For the purpose of attacking the credibility of a witness, evidence that he has been convicted of a crime shall be admitted but only if the crime involved moral turpitude. Admissibility shall depend upon a determination by the court that the probative value of this evidence outweighs its prejudicial effect.

Although this rule differs from rules of other jurisdictions in a number of important respects, "the relevant inquiry is whether the conviction bears on testimonial reliability—whether the convicted person would regard lightly the obligation to tell the truth." V.R.E. 609, Reporter's Notes (citing *State* v. *LaPlante,* 141 Vt. 405, 408, 449 A.2d 955, 956-57 (1982)). The offense of sexual assault upon a minor involves moral turpitude because it is a "socially undesirable [and] base or depraved" act, *State* v. *LaPlante, supra,* 141 Vt. at 408, 449 A.2d at 956; but conviction does not per se establish the offender as a person who regards lightly the obligation to tell the truth. Cf. *id.* at 409, 449 A.2d at 957 (quoting *Burgess* v. *State,* 161 Md. 162, 171, 155 A. 153, 157 (1931)). "The assumption that [crimes of violence] are probative of credibility because a person convicted of assault is a bad man, and a bad man is also a liar, does not hold water . . . ." 3 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 609[02], at 609-55 (1982).

Under the second sentence of V.R.E. 609(a), the probative value of the evidence must be weighed against the danger of un-

fair prejudice resulting from its admission. Cf. V.R.E. 403. This "balancing test," V.R.E. 609, Reporter's Notes; cf. *State* v. *Gardner*, 139 Vt. 456, 460, 433 A.2d 249, 251 (1981), "gives the trial judge discretion to exclude evidence that is technically relevant if its probative value is outweighed by dangers of prejudice, confusion, or delay." V.R.E. 403, Reporter's Notes.

In this case, evidence of the complainant's conviction was of limited probative value regarding credibility; however, its admission could have risked unfairly inflaming the jury's prejudice, and it could have confused the issues, by raising the inference that the victim's prior conviction bore some substantive relevance aside from the issue of the victim's credibility. We therefore conclude that the trial court did not abuse its discretion in excluding evidence of the witness's conviction.

*The conviction for simple assault is affirmed; the kidnapping conviction is reversed and remanded.*